## In re AMERICAN TRAVELLERS CORP. SECURITIES LITIGATION.

### This Document Relates to all Actions.

### No. 92–1304.

United States District Court, E.D. Pennsylvania.

Nov. 3, 1992.

---

Daniel E. Bacine, Barrack, Rodos & Bacine, .Philadelphia, Pa., for plaintiffs.

Scott L. Vernick, Philadelphia, Pa., for defendant.

## MEMORANDUM

BARTLE, District Judge.

Plaintiffs bring this consolidated class action against American Travelers Corporation (ATC) and several of ATC's senior executives. Plaintiffs allege violations of the Securities Exchange Act of 1934 §§ 10(b) and 20(a), as amended by 15 U.S.C. §§ 78j(b) and 78t(a), and of Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission. Plaintiffs also allege common law negligent misrepresentation under Pennsylvania Law. Defendants have moved to dismiss all counts pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, and for failure to plead fraud with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.

Defendant ATC specializes in the underwriting and sale of supplemental accident and health insurance policies to senior citizens. ATC focuses its business on the segment of the senior citizen population that pays for long-term health care from their own personal resources. The company offers, among other products, long-term nursing home and home health care policies, designed to help policyholders defray the cost of nursing home confinement and home health care treatment. In addition, it offers Medicare Supplement coverage which provides payments to cover "deductibles" and other gaps in Medicare coverage. Prior to 1986, ATC conducted virtually all of its business in Pennsylvania. Since that time, ATC has sought to establish a national presence and is now licensed to conduct business throughout most of the United States. As a result of its rapid expansion, ATC achieved an unbroken string of record revenues and earnings from 1988 through 1990.

Plaintiffs allege that by early 1991, defendants knew that a shift in the company's product mix was occurring, with an increasing percentage of ATC's total annualized premiums generated by ATC's medicare supplement business. The medicare supplement business has a lower profit margin than the Company's long-term care business. The shift would therefore weaken the company's overall profitability. During the first and second quarters of 1991, ATC continued to report significant increases in revenues and net income. However, at the same time, the benefits paid out to policyholders increased dramatically and the company's overall loss ratio increased. During the third quarter of 1991, while ATC again reported an increase in revenues and net income, it described the increase as "lower then anticipated." The company disclosed that the sluggish third quarter was due mainly to costs associated with the medicare supplement business.

On March 3, 1992, ATC announced that its previously reported earnings for the second and third quarters of 1991 were incorrect, and that the company was restating those earnings. The company said it was correcting its second quarter net income by lowering it almost 25% to $2.6 million or $.25 per share, compared to previously reported net income of $3.4 million or $0.30 per share. The company lowered its third quarter net income 20% to $2.9 million or $0.28 per share compared with previously reported net income of $3.6 million or $0.35 per share. Defendants stated that they undertook the restatement to correct errors in recording certain expenses and acquisitions completed during 1991. At the same time, ATC announced its financial results for the fourth quarter of 1991 and for the entire fiscal year. The company reported that although revenue increased by 53.6%, net income declined to $11.3 million or $1.09 per share for fiscal 1991 from $11.5 million or $1.32 per share for fiscal 1990. As a result of these announcements, trading in ATC's common stock, was temporarily halted on the NASDAQ/NMS. The company's stock, which had been trading as high as $20 per share during the class period, lost nearly 20% of its then total value and closed that day at $11.25 per share.

Plaintiffs allege that ATC willfully and recklessly concealed the effects of the shift in its product mix from the investing public. According to the complaint, defendants manipulated the company's financial

statements to overstate its net income and earnings per share. Furthermore, defendants made numerous statements describing the shift as "an isolated event," and "temporary" when allegedly they knew that the shift was likely to continue. Plaintiffs also contend that defendants made several optimistic financial projections, which had no reasonable basis given the effects of the shift in product mix. Finally, plaintiffs allege that defendants made false and misleading statements about the company's ability to handle its explosive growth.

▪ As stated above, defendants seek to dismiss plaintiffs' complaint under Rule 12(b)(6). When considering such a motion, the court must accept as true all allegations in the complaint, and all reasonable inferences which can be deducted therefrom. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989).

▪ Plaintiffs allege accounting fraud in paragraphs 70(a)–(c) and (n) of the complaint. Defendants argue that the inaccurate disclosures concerning ATC's earnings set forth in these paragraphs merely describe errors in calculation, and are therefore non-actionable mismanagement. This contention is without merit. Rule 10b–5 [1], promulgated by the Securities and Exchange Commission under § 10(b) of the Exchange Act of 1934, makes it unlawful to misrepresent or omit material information in connection with the purchase or sale of securities. *Shapiro v. UJB Financial Corp.*, 964 F.2d 272 (3d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992). In order to state a claim under § 10(b), and Rule 10b–5, plaintiff must plead a false representation of a material fact, the defendant's knowledge of its falsity, the defendant's intention that

the plaintiff rely on it, the plaintiff's reasonable reliance on the representation, and the plaintiff's resulting loss. *Id.* Claims of mismanagement or breach of fiduciary duty unaccompanied by any "deception, misrepresentation or nondisclosure," do not constitute federal securities fraud. *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 476, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480 (1977).

▪ In the instant case, however, plaintiffs allege more than mismanagement. They allege that defendants disseminated false financial information by deliberately or recklessly misstating ACT's earnings for the second and third quarters of 1991. False statements of material fact made knowingly or recklessly are actionable under § 10(b). Thus, plaintiffs' allegations of accounting fraud state a claim upon which relief can be granted.

▪ Plaintiffs' allegations, contained in paragraphs 70(*o*) and (p) of the complaint, also withstand the motion to dismiss under Rule 12(b)(6). In these paragraphs plaintiffs allege that defendants falsely attributed the increases in benefits to policyholders and in ATC's overall loss ratio to the normal process of expansion. Plaintiffs contend that defendants failed to disclose that an "unhealthy" increase in medicare supplement claims caused a substantial portion of the increases. Here, plaintiffs have alleged a material and deliberate misrepresentation of fact by defendants, which is sufficient to state a claim under § 10(b).

▪ In contrast, the allegations contained in paragraphs 70(m) and 70(r) of the complaint fail to allege any false representation and therefore must be dismissed for failure to state a claim under § 10(b). In paragraph 70(m) of the complaint, plaintiffs challenge ATC's statement concerning its

---

1. Rule 10b–5 provides that it is unlawful for any person

    directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

    (a) To employ any device, scheme, or artifice to defraud,

    (b) To make any untrue statement of a material fact or to omit to state a material fact

necessary in order to make the statements made in light of the circumstances under which they were made, not misleading, or

    (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1991).

installation of a new computer system designed to help the company manage its continued growth and expansion. According to the complaint, ATC's 1990 annual report stated:

One of our most significant accomplishments is the installation of a state-of the art computer system which encompasses all operating areas within the Company. As this new system gets fully implemented, it will greatly enhance our capacity and streamline our workflow ...

(Complaint at ¶ 31). Plaintiffs do not dispute that ATC purchased a "state of the art" computer system. They claim that contrary to defendants' promises, the system was in fact inadequate to serve the company's needs, and actually contributed to the company's rising costs. The challenged statement, however, indicates that the computer system would provide significant benefits only "when fully implemented." This suggests that ATC expected a transitional period during which problems would be worked out. Plaintiffs do not allege that the system was fully implemented at the time of the alleged problems. However, even if the computer system failed to live up to expectations after being "fully implemented," that would indicate mismanagement at the most. *See Santa Fe* at 463, 97 S.Ct. at 1296. The complaint does not allege that defendants knew or had any reason to believe, at the time the statement was made, that the computer system would not perform as expected. Plaintiffs have failed to allege either a misstatement of fact or knowledge of its falsity.

Paragraph 70(r), alleges that defendants misled investors into believing that ATC was immune to the effects of the recession. Here also, plaintiffs fail to allege any false or misleading statement which would support a claim under § 10(b). Plaintiffs challenge a letter to shareholders which stated in part:

[ATC has] produced superb financial results during both upswings and downswings in the economic cycle. Our products satisfy a basic security need and it is common for basic needs to receive as much, if not more, focus in bad times as is good.

(Complaint at ¶ 29). Contrary to plaintiffs' assertion, this statement does not promise a recession proof company.[2] Plaintiffs do not dispute the fact that ATC has produced superb financial results in the past, that ATC satisfies a basic security need, or that basic needs receive "as much ... focus in bad times as in good." Rather, plaintiffs attack the statement by alleging that "defendants knew that a lowering of interest rates in a recessionary environment would reduce the spendable income of senior citizens living on investment retirement income which would weaken the demand for the Company's product." (Complaint at ¶ 70(r)). This alleged omission cannot support a § 10(b) claim. The general effect of a recessionary environment on the income of senior citizens, as on the rest of the community, can hardly be considered secret information concealed from investors. The investing public is charged with "knowledge of information of which they reasonably should be aware," *Lewis v. Chrysler Corp.*, 949 F.2d 644, 651 (3d Cir.1991), citing *Warner Communications, Inc. v. Murdoch*, 581 F.Supp. 1482 (D.Del.1984). Thus, because defendants did not withhold any relevant information which would render the statement misleading, the allegation contained in paragraph 70(r) must be dismissed.

Plaintiffs have also moved to dismiss Count I of the complaint for failure to plead fraud with particularity as required by Rule 9(b)[3] of the Federal Rules of Civil Procedure. With respect to paragraphs 70(d)–70(1), (q), and (s) of the complaint, this motion will be granted. These paragraphs relate to several optimistic predic-

---

2. Even if the court were to read the statement as plaintiffs suggest, such vague expressions of general optimism constitute unactionable "puffing." *See Shapiro*, 964 F.2d at 284 n. 12.

3. Federal Rule of Civil Procedure 9(b) states, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, Knowledge, and other condition of mind of a person may be averred generally."

tions and statements of opinion concerning ATC's financial future. Plaintiffs challenge defendants' characterization of the increase in ATC's medicare supplement business as "an isolated event" and "temporary." Furthermore, plaintiffs claim that ATC's optimistic projections of future earnings were false and misleading because defendants knew that the shift in the Company's product mix would result in a decreasing level of profitability.[4] Finally, plaintiffs challenge defendants' statement that pending litigation "will not have a material adverse effect on the Company's consolidated financial statements" and allege that defendants "knew that the company failed to make adequate provisions for reserves in connection with litigation against it ..." (complaint at ¶¶ 70(q), (36)).

■■■■ Optimistic projections and statements of opinion are actionable if made without a reasonable basis. *Virginia Bankshares, Inc. v. Sandberg*, —— U.S. ——, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991). However, a disappointed investor may not bring an action for securities fraud simply because an optimistic projection fails to materialize. In order to prevent spurious and vexations claims, courts must determine that failed predictions contain sufficient indicia of fraud to justify "the enormous expense and burden of discovery and trial of a large securities fraud actions." *Kowal v. MCI Communications*, 60 U.S.L.W. 2796, 1992 WL 121378 (D.C.Dist.1992).

■■■■ Rule 9(b) of the Federal Rules of Civil Procedure addresses this problem by requiring that allegations of fraud be pleaded with particularity.[5] Thus, although a complaint may state a prima facie case for securities fraud under § 10(b), the complaint must be dismissed if it fails to provide a sufficient factual basis to substantiate its claims. When the complaint alleges that an optimistic prediction lacks a reasonable basis, "it need not necessarily allege the specific information at defendants' disposal at the time the prediction was made." *Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628, 646 (3d Cir.1989). However, the complaint must at

---

4. Allegations concerning the nature of the shift in product mix are set forth in ¶¶ 70(d)–70(*l*) and 70(s) of the complaint. ¶ 70(d) states, for example:

> There was no reasonable basis for defendant Powell's projection of increased earnings for 1991 ... because, inter alia, defendants knew that the shift in the Company's product mix toward its lower-margined Medicare Supplement business would result in an increasing rate of Medicare Supplement claims and a decreasing level of profitability.

Similarly, ¶ 70(e) provides:

> The statement in American Travellers' March 25, 1991 press release that net income for the first quarter of 1991 would remain flat due to factors that were 'of a temporary and non-recurring nature,' ... was false and misleading because defendants knew that the shift in the Company's product mix toward the lower-margined Medicare Supplement business was not temporary and non-recurring and that such shift would persist at least for the balance of 1991 and would materially and negatively affect the Company's profitability.

In ¶ 70(j) plaintiffs challenge ATC's statement that "the reserves for future policy benefits are adequate to cover anticipated losses and expenses" on the grounds that the company allegedly "knew that reserves were inadequate to, *inter alia,* cover anticipated losses and expenses associated with the 'marked increase' in the Company's Medicare Supplement business." Although this allegation does not directly challenge the company's predictions about the nature of the "shift", it hinges on the premise that the company knew or had reason to know of the shift's likely duration and that the reserves were inadequate to account for it. If the company had no reason to believe that the shift was not a temporary event, then their predictions as to the adequacy of the loan loss reserves did not lack a reasonable basis.

These allegations must be distinguished from those set out in paragraphs 70(*o*) and (p). Those allegations do not challenge the accuracy of defendant's predictions, but rather allege that defendants' explanations of certain negative financial results where false and misleading because defendants withheld relevant information.

5. It is worth noting that Rule 11 of the Federal Rules of Civil Procedure is also designed to prevent frivolous litigation by requiring that attorneys sign any pleading, motion or paper, certifying that:

> it is well grounded in fact and warranted by existing law or a good faith. argument for the extension, modification, or reversal or existing law, and that it is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation.

least "accompany [its] allegations with facts indicating why the charges against defendants are not baseless and why additional information lies exclusively within defendants' control." *Id.* Plaintiffs must specify more than merely the time, place and content of the alleged fraudulent representation if those allegations alone do not give rise to a strong inference of fraudulent intent. *Romani v. Shearson Lehman, Hutton,* 929 F.2d 875 (1st Cir.1991). Specifically, when plaintiffs allege that defendants knew of adverse circumstances which they failed to disclose or account for in making optimistic predictions, the complaint must at least contain factual allegations that the adverse conditions existed at the time of the misstatement and that defendant had reason to know of them. *Id.*

Plaintiffs provide no factual support for the conclusion that defendants knew or could have known that the shift in product mix was not temporary. They merely allege that the shift lasted longer then expected. Similarly, plaintiffs provide no basis for the statement that defendants knew that the company's loss reserves would be inadequate to cover future losses resulting from litigation. Inaccurate predictions alone are not actionable. While it is true that Rule 9(b) allows scienter to be averred generally, plaintiffs must provide some factual basis for conclusory allegations of knowledge or intent. *See e.g. Quaknine v. MacFarlane,* 897 F.2d 75, 81 (2d Cir.1990). The ability to plead scienter generally, "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir.1990). Allegations which by themselves indicate nothing more than innocent mistake or mismanagement cannot be transformed into a claim for fraud merely by asserting that plaintiffs "knew" that their predictions were inaccurate.

The court is mindful that the particularity rule should be relaxed when factual information "is peculiarly within the defendant's knowledge or control." *Craftmatic,* 890 F.2d at 645. In the instant case, plaintiffs have alleged that "further detailing of the specifics of the fraudulent scheme ... is not possible at this time because the underlying information with respect thereto is non-public and lies exclusively within defendants' control." (complaint at ¶ 71). This conclusory declaration, however, does not satisfy the requirements of rule 9(b). In *Shapiro,* 964 F.2d at 285, the Court of Appeals stressed that even under a relaxed interpretation of rule 9(b), plaintiffs "must accompany such an allegation with a statement of the facts upon which their allegation is based." *Id.* Plaintiffs may allege the necessary facts on information and belief so long as the complaint delineates at least "the nature and scope of plaintiffs' effort to obtain, before filing the complaint, the information needed to plead with particularity." *Id.* Thus, *Shapiro* does not relieve plaintiffs from the obligation to provide allegations indicating why the charges are not baseless. *Shapiro* allows plaintiffs to allege, on information and belief, the specific facts which give rise to the necessary inference of fraud if the information lies within the defendant's exclusive possession and control, and plaintiffs have made diligent efforts to obtain such information.

Here, the plaintiffs have satisfied neither requirement. They have not detailed their efforts to obtain needed information from defendants. Furthermore, as explained above, they have not provided any allegations, on information and belief or otherwise, which would suggest that the charges are not baseless. Because nothing in the complaint gives rise to the inference of fraud required by 9(b), paragraphs 70(d)–70(1), (q), and (s) of the complaint will be dismissed with leave to amend within eleven (11) days of this order.

Finally, Count II of the complaint, alleging common law negligent misrepresentation, must be dismissed for failure to state a claim upon which relief can be granted. Under Pennsylvania law, an essential element of a claim for common law misrepresentation is a plaintiffs' reliance on the misrepresentation. *See Squitieri v. Gould,* 133 F.R.D. 25, 28 (E.D.Pa.1990), *In re Scott Paper Co. Sec. Litig.,* 142 F.R.D.

611 (E.D.Pa.1992). In the instant case, the complaint lacks the necessary allegations of reliance.

## ORDER

AND NOW, this 3rd day of November, 1992, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

1. The Motion of defendants to Dismiss plaintiffs' complaint is DENIED as to paragraphs 70(a)–(c), (n), (o) and (p) of the complaint and GRANTED as to paragraphs 70(m) and (r) and as to Count II of the complaint.

2. The motion of defendants is GRANTED as to paragraphs 70(d)–70(1), (q), and (s) of the complaint for failure to plead with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, with leave to amend as to these paragraphs within eleven (11) days from the date of this Order.