**Richard ROMANI, Plaintiff, Appellant,**

v.

**SHEARSON LEHMAN HUTTON, et al.,
Defendants, Appellees.**

No. 90–2101.

United States Court of Appeals,
First Circuit.

Heard March 4, 1991.

Decided April 8, 1991.

Edward Manchur with whom David Pastor, Kenneth Gilman, and Gilman and Pastor were on brief, for plaintiff, appellant.

John J. Kenney with whom Jay S. Handlin, Simpson Thacher & Bartlett, Gerald F. Rath, and Bingham Dana & Gould were on brief, for defendants, appellees, Shearson Lehman Hutton, Inc., Shearson Lehman Bros. Partnership Services, Inc. and Lana Lobell Income Partners II.

Richard M. Goldstein, with whom Shea & Gould, Mark A. Michelson, Sarah Chapin Columbia and Choate, Hall & Stewart, were on brief, for Touche Ross & Co.

Before CAMPBELL and CYR, Circuit Judges, and COFFIN, Senior Circuit Judge.

COFFIN, Senior Circuit Judge.

Appellant Richard Romani brought this securities fraud action on behalf of himself and a class of persons consisting of all similarly situated investors in a horsebreeding limited partnership. Romani alleged that the defendants—varied individuals and entities responsible for the partnership's public offering—fraudulently induced investments through misrepresentations and omissions in the offering materials that falsely inflated the partnership's financial potential. The district court dismissed one federal claim on statute of limitations grounds and another for failure to plead with sufficient particularity under Rule 9(b) of the Federal Rules of Civil Procedure. Having rejected both federal claims, the court concluded that the pendent state claims also should be dismissed.

Romani appeals only the Rule 9(b) dismissal of his claim asserted under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5, promulgated thereunder, and the concomitant dismissal of his state law claims. He further argues that he should have been granted leave to amend his dismissed complaint. We conclude that the district court correctly decided these issues, and therefore affirm.

## I. *Background*

Lana Lobell Income Partners II Limited Partnership ("Lana Lobell II" or the "partnership") was formed in 1986 to allow interested individuals to invest in the standardbred horsebreeding business. The partnership planned to buy standardbred horses with the funds contributed by limited partners and eventually to distribute profits from the later sale of the horses. The partnership was to be directed by two individual managing general partners, defendants Alan J. Leavitt and Jack E. Rosenfeld, and was to conduct business through the facilities of defendant Lana Lobell Farms, Inc., the horse farm owned by Leavitt and Rosenfeld.

On April 24, 1986, Lana Lobell II publicly offered for sale 9,700 limited partnership units pursuant to a Registration Statement and Prospectus. Defendant Shearson Lehman Hutton, Inc., was the exclusive selling agent for the public offering and defendant Shearson Lehman Brothers Partnership Services, Inc. was the associate general partner of the partnership. Defendant Touche Ross & Company, a public accounting firm, prepared a report that was included in the offering materials.

Plaintiff bought five partnership units on May 7, 1986, at $1,000 per unit. In July 1986, a brief prospectus supplement was published stating that as of August 1, 1986, the day after the offering closing date, Rosenfeld would be withdrawing "from ownership and management of the operations of Lana Lobell Farms." The supplement further stated, however, that Rosenfeld would "continue as a Managing General Partner of the Partnership" and that "his departure should not impact the day to day operations" of Lana Lobell Farms or the partnership.

Appellant's return on his investment did not meet the predictions made in the offering materials. Instead of expected cash distributions in excess of 13%, the yields in 1987 and 1988 were approximately 2½ to 3%. In March 1989, the limited partners were told that an affiliate of Lana Lobell Farms (that partially owned some of the partnership horses) recently had filed for protection under Chapter 11 of the Bankruptcy Code following two years of cash flow problems.

As a result of this poor financial performance, on July 31, 1989, Romani filed the instant action. Before defendants responded to the original complaint, he filed an amended version. Count I of that amended complaint alleged that the defendants' false and incomplete statements regarding the partnership constituted intentional securities fraud in violation of section 10(b) of the Securities Exchange Act and its associated regulation, Rule 10b–5. Counts II and III, which are not involved in this appeal, alleged additional violations of federal law. Counts IV through VII alleged pendent state claims for common law fraud and deceit, breach of fiduciary duty and gross negligence.

In numerous paragraphs of the amended complaint, plaintiff refers to statements from the offering materials that depict in glowing terms the goals and financial potential of the partnership and the qualifications of the managing general partners, Leavitt, Rosenfeld and Lana Lobell Farms. According to plaintiff, these statements touting the preeminence of Lana Lobell Farms and its managers in the standardbred breeding industry were false misrepresentations designed to lure investors.

The claim of misrepresentation was linked to four material adverse facts about the partnership that Romani claims were deliberately withheld from him and other class members:

(1) That the poor financial condition of Lana Lobell Farms and their affiliates made Partnership objectives and financial projections unrealistically optimistic and unattainable;

(2) That the departure of Rosenfeld, contrary to the Defendants' misrepresentations, was a major loss to the Partnership, in terms of financial management, expertise, capital and other resources, and although he was listed as a Managing General Partner of the Partnership, he actually had no substantive responsibilities, duties, or participation in its management;

(3) That the standardbred horse industry, in general, and Lana Lobell Farms, in particular, was entering a recessionary period and, thus, representations made to investors which were largely based on past performance which occurred amidst dramatically more favorable operating conditions and markets, were materially false, misleading, and deceptive; and

(4) That the managing general partners, after selling their interests out to the Partnership during the public offering period at extremely favorable prices, had no incentive to produce positive results, meet Partnership objectives, or generate the type of attractive financial returns which were represented to investors in the offering materials.

Complaint at ¶ 47.

Defendants moved for dismissal, arguing, *inter alia*, that the complaint failed to satisfy the requirement of Fed.R.Civ.P. 9(b) that fraud claims be pleaded with particularity. In granting dismissal of the section 10(b) claim, the district court concluded that the complaint insufficiently specified the nature of the alleged wrongdoing and failed "to delineate the particular part each defendant played in the alleged fraud," making it impossible for the defendants to respond adequately to the charges against them. The court held that plaintiff's " 'shoot for the moon' pleading directly violates the Rule 9(b) requirement that each defendant's role in the alleged fraud be particularized," Opinion at 5 (quoting *Konstantinakos v. FDIC*, 719 F.Supp. 35, 39 (D.Mass.1989)).

On appeal, Romani argues that his Amended Complaint was sufficiently particular to place the appellees on notice of the conduct with which they were charged

878

and to permit them to frame responsive pleadings, thereby satisfying Rule 9(b). He further claims that, in light of the pre-discovery stage of the case, the court erred in applying an excessively strict particularity standard with respect to the role played by each defendant in the alleged wrongdoing. He also argues that, even if dismissal were proper, the court abused its discretion in failing to grant leave to amend. Finally, appellant contends that dismissal of the pendent state claims was improper because it was based on the erroneous dismissal of his federal claim.

## II. *Discussion*

█ It is well settled that Rule 9(b) requires the plaintiff in a securities fraud case to specify the time, place and content of an alleged false representation. *Wayne Investment v. Gulf Oil Corp.*, 739 F.2d 11, 13 (1st Cir.1984). Although a plaintiff need not specify the circumstances or evidence from which fraudulent intent could be inferred, the complaint must provide some factual support for the allegations of fraud, *id.; New England Data Services, Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir. 1987). The requirement that supporting facts be pleaded applies even when the fraud relates to matters peculiarly within the knowledge of the opposing party. *Wayne Investment*, 739 F.2d at 13–14, *quoted in New England Data*, 829 F.2d at 288.

Romani argues that his complaint satisfies the requirements of Rule 9(b) because it identifies the offering materials as the "time and place" of the allegedly false and misleading representations and provides "significant detail" about the material omissions on which his claim of fraud principally relies. We disagree. It is true that the complaint isolates the offering materials as the source of the alleged fraud, and this reference probably is sufficient to identify the time and place of the alleged mis-

representations. *See Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir.1986). Romani also argues with some force that he has identified the "content" of the asserted fraud adequately by pointing to the statements in the offering materials unreservedly extolling the quality and potential of the partnership and to the allegedly undisclosed contrary fact that there was trouble afoot.

█ Whether or not the time, place and content specificity is met, however, the complaint nevertheless is deficient because the allegations of fraud are entirely unsupported. The complaint contains no factual allegations that would support a reasonable inference that adverse circumstances existed at the time of the offering, and were known and deliberately or recklessly disregarded by defendants. Where allegations of fraud are explicitly or, as in this case, implicitly, based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief. *New England Data Services*, 829 F.2d at 288; *Wayne Investment*, 739 F.2d at 13; *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir.1985). We have been especially rigorous in demanding such factual support in the securities context to minimize the chance "that a plaintiff with a largely groundless claim will bring a suit and conduct extensive discovery in the hopes of obtaining an increased settlement, rather than in the hopes that the process will reveal relevant evidence," *New England Data Services*, 829 F.2d at 288 (citing *Wayne Investment*, 739 F.2d at 13). *See also Konstantinakos*, 719 F.Supp. at 38 ("The rule is especially important in securities fraud cases where the strike suit value of a complaint is high.")[1]

The only statement in the complaint sufficiently factual to provide support for the fraud claim concerns plaintiff's first alleged material omission, that Lana Lobell Farms was in poor financial condition. Paragraph 44 quotes a statement from the

1. Plaintiff argues for the first time on appeal that Rule 9(b) should not be applied to claims under the federal securities laws. It is by now "axiomatic that an issue not presented to the trial court cannot be raised for the first time on appeal." *Johnston v. Holiday Inns, Inc.*, 595

F.2d 890, 894 (1st Cir.1979); *Boston Celtics Ltd. Partnership v. Shaw*, 908 F.2d 1041, 1045 (1st Cir.1990). We therefore decline to consider the argument beyond noting that, at least facially, it appears meritless.

partnership's 1988 10–K form referring to a two-year-old cash flow problem at an affiliate of Lana Lobell Farms. But this document was released in March 1989, nearly *three* years after the offering materials were disseminated. Even if we view the statement as operative at the end of the fiscal year, December 31, 1988, the two-year period still reaches back only to a time months after the offering closed. Indeed, for the partial year in which the partnership operated in 1986, the complaint alleges that the limited partners received cash distributions representing nearly a 20% annualized cash yield. *See* Complaint at ¶ 42. Such a return on investment appears to negate plaintiff's assertion that the partnership already was on shaky financial ground in mid-1986 and that defendants knew this.

None of plaintiff's other asserted material omissions is supported by any allegations of fact. The claim that Rosenfeld's departure from Lana Lobell Farms was a major loss to the partnership is wholly undeveloped. The complaint fails to specify any connection between Rosenfeld's role and the partnership's ability to reach its profitability goals, and there is no reference to how his departure related to Lana Lobell II's disappointing performance.

■■■ The third assertedly omitted fact—that the standardbred horse industry was entering a recessionary period, making past performance an imperfect indicator of the future—cannot fairly be termed an omission, let alone a fraudulent one. The Touche Ross report attached to the Prospectus detailed a number of specific problems facing the standardbred industry, including overbreeding, declining attendance at races and an average decline in yearling prices. *See* Appendix to Touche Ross report at 3, 1–4. The offering materials are replete with statements, some highlighted, emphasizing the high risks associated with Lana Lobell II and that "[t]here can be no assurance that the investment objectives of the Partnership will be attained." *See, e.g.,* Prospectus at 1, 9, 26–27, 40–42, 44.[2] Thus, although the offering materials were optimistic about the prospects for Lana Lobell II, the documents unquestionably warned potential investors in a meaningful way that economic conditions in the horse-breeding industry were uncertain. Documents such as this, which "clearly 'bespeak caution,' " are not the stuff of which securities fraud claims are made, *Luce,* 802 F.2d at 56. *See also Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg,* 651 F.Supp. 877, 881 (D.Conn.1986).[3]

■■■ The final alleged omission, that the managing general partners Leavitt and Rosenfeld had no incentive to produce positive results for the partnership, similarly is not properly characterized as an omission. The offering materials informed investors that, as part of the partnership transaction, Leavitt and Rosenfeld would be selling their horses to Lana Lobell II. Whether such a change in their relationship to the horses and Lana Lobell Farms was likely to reduce their motivation thus was a matter that each investor presumably would have considered before deciding to purchase units in the partnership. Moreover, plaintiff's complaint contains no allegations permitting an inference that Leavitt and Rosenfeld, in fact, failed fully to perform their obligations to the partnership, causing the poor results.

The inadequacy of plaintiff's complaint is highlighted when it is contrasted with allegations offered by plaintiffs in other securities fraud cases. For example, in *Luce,* 802 F.2d at 55, plaintiffs claimed fraud in the solicitation of investors for a real estate partnership. Although some portions of the plaintiff's complaint were dismissed

---

**2.** At page 26, under the heading "Risk Factors," the Prospectus stated that "it is impossible to predict with any certainty the future economic trend of the Standardbred industry as a whole."

**3.** Although plaintiff did not attach a copy of the offering materials to his complaint, defendants submitted the documents with their motions to dismiss. This step was proper and did not convert the motion to dismiss into a motion for summary judgment. *See Fudge v. Penthouse Int'l, Ltd.,* 840 F.2d 1012, 1015 (1st Cir.1988) (" 'when plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading' ") (quoting 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1327 at 762–63 (1990)).

because the allegations were "entirely conclusory and unsupported by assertions of fact," *id.* at 54, other portions based on specific facts survived. The allegations deemed sufficient to deflect a Rule 9(b) dismissal included: (1) that the general partners contributed only approximately $80,000 to the partnership despite a representation in the Offering Memorandum that they would make capital contributions of $385,000; (2) that the general partners entered into an agreement to transfer their partnership interests without the knowledge and consent of the limited partners, in direct contravention to representations made in the Memorandum, and (3) that the general partners collected management fees from the partnership for well over one year despite a representation that the fees would be collected for only one year. *Id.* at 55–56.

In another Second Circuit case, *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1248 (2d Cir.1987), the plaintiff claimed on information and belief that the defendants in their Offering Memorandum falsely had stated that the General Partner intended to observe the high standards required of it as a fiduciary. This belief was supported by allegations that defendants failed to maintain segregated accounts for their various ventures and actually siphoned the limited partners' funds into other ventures. DiVittorio also alleged that the memorandum estimated that the partnership's properties contained nearly 9.3 million tons of coal, substantially more than in fact existed. In *Hurley v. FDIC,* 719 F.Supp. 27 (D.Mass.1989), the complaint alleged that a bank's financial reports were fraudulent because they did not take into account numerous problem loans. The complaint contained many details about specific delinquent loans, the bank's net worth and its reserves for potential loan losses. *Id.* at 31. *See also Wool v. Tandem Computers, Inc.,* 818

F.2d 1433, 1440 (9th Cir.1987) ("The complaint specified the exact dollar amount of each alleged overstatement, and the manner in which such representations were false and misleading.").

In each of these cases, the plaintiffs alleged in some detail the facts and figures upon which their claims of misrepresentation were based. Romani's complaint is comparatively barren. In essence, he speculates that defendants committed fraud based solely on the partnership's failure to be as profitable as the offering materials indicated was possible. Were such a pleading deemed sufficient, the advent of a recession could be expected to trigger a multitude of complaints in which plaintiffs seek to impose liability for their financial disappointments based on entirely fabricated scenarios of fraud. Without any shred of factual support for plaintiff's hypothetical tale of deception, we are faced with precisely the sort of fishing expedition for fraud that Rule 9(b) is designed to prevent. *See Wayne Investment,* 739 F.2d at 14. As we previously have observed, " 'the rule does not permit a complainant to file suit first, and subsequently to search for a cause of action,' " *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir.1985) (quoting *Lopez v. Bulova Watch Co., Inc.,* 582 F.Supp. 755, 766 (D.R.I.1984)).

Accordingly, because plaintiff's allegations do not meet the Rule 9(b) threshold, we affirm the district court's judgment dismissing Count I of plaintiff's complaint for lack of particularity.[4]

### III. *Leave to Amend*

Plaintiff claims that the district court erred in dismissing his complaint without granting him leave to amend. The decision whether to allow amendment of a pleading is a matter within the discretion of the district court, and we will reverse only for an abuse of that discretion. *Kennedy v. Josephthal & Co.,* 814 F.2d 798, 806 (1st

**4.** Our discussion makes it unnecessary to address any other pleading deficiencies, including the one emphasized by the district court—that the complaint does not delineate the particular part each defendant played in the alleged fraud. We note, however, that at least with respect to certain defendants, we are in agreement with the district court. Other defendants may be

subject to suit on a less demanding standard. *See Ouaknine v. MacFarlane,* 897 F.2d 75, 80 (2d Cir.1990) (reference to an Offering Memorandum satisfies 9(b)'s requirement of identifying time, place, speaker, and content of representation with respect to particular defendants who are insiders or affiliates participating in the offer of securities).

Cir.1987). We find no such abuse in this case. Indeed, plaintiff's failure to move for leave to amend arguably precludes us from reviewing the decision to dismiss with prejudice. *See Wayne Investment,* 739 F.2d at 15. We are unpersuaded by plaintiff's argument on appeal that his general opposition to defendants' motions to dismiss—which sought dismissal with prejudice—adequately apprised the district court of his claimed entitlement to an opportunity to amend. Plaintiff's silence may well have been viewed by the court as an implicit concession that he had nothing to add to his allegations. Even at oral argument before this court, plaintiff failed to indicate specifically how he would amend the complaint so as to comply with Rule 9(b).[5] On this record, with neither an express request to the district court for leave to amend nor any indication that successful amendment is possible, we have no basis on which to upset the district court's exercise of discretion.[6]

*For the foregoing reasons, the judgment of the district court is AFFIRMED.*

---

5. Although plaintiff's counsel stated that he did have information that could be added to the complaint, particularly concerning the financial condition of Lana Lobell Farms, he offered no specifics.

6. Because the district court properly dismissed plaintiff's federal securities claim, it correctly declined to exercise pendent jurisdiction over his state law claims. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Monahan's Marine, Inc. v. Boston Whaler, Inc.,* 866 F.2d 525, 530 (1st Cir.1989).