In re **LOTUS DEVELOPMENT CORP. SECURITIES LITIGATION.**

**Civ. A. No. 94-11279-PBS.**

United States District Court, D. Massachusetts.

Jan. 17, 1995.

---

Glen DeValerio, Norman Berman, Berman, DeValerio & Pease, Boston, MA, and Thomas G. Shapiro and Michelle H. Blauner, Shapiro, Grace & Haber, Boston, MA, for plaintiffs.

Dennis M. Kelleher, and Thomas J. Dougherty, Skadden, Arps, Slate, Meagher & Flom, Boston, MA, and Henry B. Gutman and Kerry L. Konrad, Baker & Botts, L.L.P., New York City, for defendants.

### MEMORANDUM AND ORDER

SARIS, District Judge.

### INTRODUCTION

This is a consolidated class action alleging that defendants Lotus Development Corporation ("Lotus"), James P. Manzi (the Lotus Chief Executive Officer and Chairman) and Edwin J. Gillis (the Chief Financial Officer) knowingly made certain false and misleading public statements in violation of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b–5, 17 CFR § 240.10b–5. The purported class purchased shares of common stock between April 20, 1994 and June 20, 1994.

At the scheduling conference held on November 28, 1994, pursuant to Fed.R.Civ.P. 16(b) and Local Rule 16.1, defendants requested a stay of the automatic disclosure required by Fed.R.Civ.P. 26(a)(1) and Local Rule 26.2 (which was amended effective January 2, 1995). Defendants argued that the complaint should be dismissed pursuant to Fed.R.Civ.P. 9(b), and that proceeding with automatic disclosure, as well as discovery, before resolution of their motion to dismiss, would impose on them unnecessary expense.

The Court stayed automatic disclosure subject to an expedited briefing schedule in order to enable defendants to file a motion to stay discovery pending decision on a motion to dismiss, to be supported by a five page memorandum. Such a motion was filed on December 13, 1994, and an opposition of the same length was filed on December 23, 1994. Although defendants seek to stay "discovery," the court assumes, based on the discus-

sions at the scheduling conference, that the term was intended to encompass the concept of "automatic disclosure" as well.

Defendants' motion identifies the tension between the heightened pleading standard of Fed.R.Civ.P. 9(b) and the new automatic disclosure requirement of Fed.R.Civ.P. 26(a)(1), as amended in 1993 and incorporated in Local Rule 26.2.[1] After weighing the policies underlying the two rules, and studying the papers filed, the Court **DENIES** defendants' motion.

### A. *Rule 26(a)(1)*

█ Generally, the new Rule 26(a)(1) requires the automatic disclosure of certain materials: Except to the extent otherwise stipulated or directed by order or local rule a party shall, without waiting a discovery request, provide to other parties:

(A) the name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts *alleged with particularity in the pleadings*, identifying the subject of the information; [and]

(B) a copy of, or description by category and location of, all documents, data compilations, and tangible things in the possession, custody, or control of the party that are relevant to disputed facts *alleged with particularity in the pleadings.*

Fed.R.Civ.P. 26(a)(1) (emphasis added). Subsections (C) and (D) list more specialized materials not here relevant. A party may not seek discovery from any source before the parties have met and conferred as required by subdivision (f). Local Rule 26.2(A) further provides that unless otherwise ordered by the Court, a party must provide the information subject to automatic disclosure before the meeting required by Fed.R.Civ.P. 26(f) and before it may initiate discovery.

The advisory committee has made clear that a "court may eliminate or modify the disclosure requirements in a particular case."

The notes also offer some guidance on the particularity provisos:

Broad, vague, and conclusory allegations sometimes tolerated in notice pleading— for example, the assertion that a product with many component parts is defective in some unspecified manner—should not impose upon responding parties the obligation at that point to search for and identify all persons possibly involved in, or all documents affecting the design, manufacture, and assembly of the product. The greater the specificity and clarity of the allegations in the pleadings, the more complete should be the listing of potential witnesses and types of documentary evidence. . . . [T]he rule contemplates that [the factual disputes defined in the pleadings] would be informally refined and clarified during the meeting of the parties under subdivision (f). . . . The disclosure requirements should, in short, be applied with common sense in light of the principles of Rule 1, keeping in mind the salutary purposes that the rule is intended to accomplish. The litigants should not indulge in gamesmanship. . . .

The salutary purpose identified by the advisory committee is "to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information." More colorfully put, the committee set out to slay the twin dragons of cost and delay. *See* William W. Schwarzer, *Slaying the Monsters of Cost and Delay*, 74 Judicature 178, (1991). The reform is expected to "reduce the cost and delay of obtaining plainly relevant core information, while limiting the opportunities to obstruct and delay the disclosure of such information." Schwarzer, *In Defense of "Automatic Disclosure in Discovery,"* 27 Ga. L.Rev. 655, 660 (1993). "If in the process it also helps raise the level of professionalism and restore a measure of civility, so much the better." *Id.*

---

**1.** The Local Rules, which became effective on October 1, 1992, implemented the Civil Justice Expense and Delay Reduction Plan, pursuant to the Civil Justice Reform Act of 1990 as codified at 28 U.S.C. § 475. They required automatic disclosure similar to that now required by Fed. R.Civ.P. 26(a)(1). The amended local rules went into effect while this motion was pending but do not affect the outcome of this dispute.

### B. *Rule 9(b)*

■ The rigors of Rule 9(b) have been recited with frequency in this circuit. In brief, the rule requires a specification of the time, place, and content of each alleged false representation, and where any allegation of fraud is based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief. *See, e.g., Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 878 (1st Cir.1991). The objects of the rule are three: to place the defendants on notice; to safeguard defendants from unwarranted damage to their reputations; and to safeguard defendants from the danger of strike suits. *New England Data Services, Inc. v. Becher,* 829 F.2d 286, 289 (1st Cir.1987). "The danger of strike suits" is shorthand for "the possibility that 'a plaintiff with a largely groundless claim [will be able] to simply take up the time of a number of other people [by extensive discovery], with the right to do so representing an *in terrorem* increment of settlement value, rather than a reasonably founded hope that the process will reveal relevant evidence....' " *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 (2d Cir.1979) (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 741, 95 S.Ct. 1917, 1928, 44 L.Ed.2d 539 (1975)). Many have observed that the danger of strike suits is near its apogee in securities law because of the big money at stake. *See, e.g., Romani,* 929 F.2d at 878.

### C. *Reconciling the Rules*

There are several possible ways of reconciling the policies underpinning Rule 26(a)(1) with Rule 9(b). The first option would be to give primacy to Rule 26(a)(1) and require disclosure to proceed apace without any evaluation of the merits of defendants' claims. This option, however, both disserves the goals of Rule 9(b) and ignores a key stricture of Rule 26(a)(1), avoidance of unnecessary expense. The second solution—that urged by defendants—is to give primacy to Rule 9(b) and stay automatic disclosure until the motion to dismiss is fully briefed and decided, often a lengthy process. The problem with this approach is that it carves out a wholesale exception to automatic disclosure that is not specifically contemplated by the text or committee notes.

Having rejected the extremes, the court explores the middle. The language of Rule 26(a)(1) virtually invites disputes as to which allegations are alleged specifically enough to warrant disclosure of related materials. The advisory committee states that, under the new Rule 26, such disputes "would be informally refined and clarified during the meeting of the parties under subdivision (f)." This hope is echoed by Judge Schwarzer: "[T]he pre-disclosure, pre-discovery conference mandated by amended Rule 26(f), followed by the Rule 16 conference with a judge, leading to an order that would govern disclosure and future discovery ... will help identify and clarify issues, thus cutting through ... amorphous and uninformative allegations...." In the ideal case, parties would immediately disclose all core information, manifestly pertinent to well-pled allegations; wrangle over the rest; and then—if necessary—file a motion for an order compelling disclosure or discovery pursuant to Fed.R.Civ.P. 37. But this offers little guidance where the defendants immediately press the claim that the complaint as a whole is ill-pled and should be dismissed pursuant to established circuit law.

■ The procedure followed here is meant to be summary. The burden of proof imposed on the party seeking a stay is a stiff one. To create a full-blown procedure, or to make a stay more readily obtainable simply because there is a colorable motion to dismiss, would undermine the spirit of the new rule, and vindicate the critics who cried that the reform was bound to balloon motion practice by introducing new ambiguities that would be seized upon by lawyers trained to operate in an adversarial system. *See, e.g.,* Griffin B. Bell, et al., *Automatic Disclosure in Discovery—The Rush to Reform,* 27 Ga. L.Rev. 1, 41–42, 46–47 (1992); Virginia E. Hench, *Mandatory Disclosure and Equal Access to Justice,* 67 Temp.L.Rev. 179, 204–07 (1994). The function of the judiciary is to apply the amendment adopted on a case-by-case basis while attempting to harmonize the subsidiary goals of the various federal rules with each other and with the overarching

goal of Rule 1: promoting the "just, speedy, and inexpensive" disposition of each case.

### D. *The Merits of the Motion to Dismiss*

Although they did an admirable job in presenting their case in five pages (with some creative margin and font maneuvering), defendants have not persuaded this court that their motion to dismiss is a likely winner.

■ Defendants' primary contention is that the complaint fails to plead specific facts, as opposed to hindsight inferences, tending to show that defendants knew that Lotus' financial forecasts were false when made. Overpromising does not in itself imply fraud. As defendants point out, "[c]ourts in this district have repeatedly dismissed complaints that merely quote company statements or predictions as supporting facts for fraud." *In re Stratus Computer, Inc.,* 1992 WL 73555, at *5 (D.Mass.1992) (Zobel, J.) (citing cases). In each of these cases, the plaintiffs "speculate[d] that defendants committed fraud based solely on the [entity]'s failure to be as profitable as the offering materials [or similar sources] indicated was possible." *Romani,* 929 F.2d at 880. "Were such a pleading deemed sufficient, the advent of a recession could be expected to trigger a multitude of complaints in which plaintiffs seek to impose liability for their financial disappointments based on entirely fabricated scenarios of fraud." *Id.* Judge Easterbrook has engagingly observed that this is a "familiar story" in securities litigation everywhere:

> At one time the firm bathes itself in a favorable light. Later the firm discloses that things are less rosy. The plaintiff contends that the differences must be attributable to fraud. "Must be" is the critical phrase, for the complaint offers no information other than the differences between the two statements of the firm's condition. Because only a fraction of financial deteriorations reflects fraud, plaintiff may not proffer the different financial statements and rest. Investors must point to some fact suggesting that difference is attributable to fraud.

*DiLeo v. Ernst & Young,* 901 F.2d 624 (7th Cir.), *cert. denied,* 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990).

What were missing in all of the above cases was specific factual support that—at the time the rosy forecasts were made—defendants knew, or recklessly disregarded the likelihood, that those forecasts were false. *See Romani,* 929 F.2d at 878 (dismissing complaint which contained no factual allegations that would support a reasonable inference that adverse circumstances existed at the time of the offering and were known and deliberately or recklessly disregarded by defendants); *Tapogna v. Egan,* 141 F.R.D. 370, 377–78 (D.Mass.1992). In this case, plaintiffs point to some specifics.

It is alleged, based on press reports, that, by September and October, 1994, defendant Lotus, Inc., had accumulated 20–30 weeks worth of inventory backlog in its European trade channels, rather than the usual 5–6 weeks worth—an excess valued in the vicinity of $100 million. Complaint ¶¶ 35, 58–60. Plaintiffs allege that this backlog did not appear overnight, that Lotus and its officers were aware of the problem as it was developing during the second quarter of 1994, and that they were deceiving the public when they denied rumors of backlog. Unusual backlogs may reasonably be expected to lead to decreased sales. Plaintiffs further allege that there was no realistic basis for believing that such lost sales would be fully offset by other company developments. *See* Complaint ¶¶ 46, 56.

To establish defendants' awareness of the developing backlog problem, plaintiffs point to two admissions. First, defendant Gillis, chief financial officer, made a public statement, on June 21, that sales were "below expectations *throughout the [second] quarter.*" Complaint ¶ 44 (emphasis added). Second, in the course of denying rumors that there was excessive inventory backlog in the company's European trade channels, a spokesperson assured the public: "[W]e maintain communication with the [trade] channels." In addition, the complaint alleges that defendant Gillis received weekly sales reports during the class period.

Plaintiffs make well-pled allegations of motive. They allege that all of the defendants gained heavily from an artificially inflated stock price during the class period: the insiders through sizable sales of their personal stock holdings; and the company through an important stock-financed acquisition. Complaint ¶¶ 36, 64. The timing of these transactions reinforces the claim that defendants manipulated a market overvaluation during the second quarter, by pushing excessive product on independent Lotus resellers prior to the second quarter, Complaint ¶ 26. *See Tapogna*, 141 F.R.D. at 373 (allegations of insider stock sales are "damaging," and "might, in combination with other circumstances, support an inference of fraud").

■ These are sufficient factual contentions, in combination, to support an inference that the defendants were misrepresenting Lotus' financial status to the public when they made optimistic earnings projections as late as May 25. *See* Complaint ¶¶ 30–38 (documenting time, place, and content of alleged misrepresentations).

This court concludes that the complaint is not so clearly deficient as to justify a stay of automatic disclosure, and, in due course, discovery. After all, automatic disclosure relating to whether or not there was excessive inventory during the class period, and the speed of the build up may well promote settlement and expedited resolution of this litigation. This memorandum and order should not be construed to preclude defendants from pressing their motion to dismiss and for a stay of discovery in fuller form.

### ORDER

Defendants' Motion in Support of Discovery Stay Pending Decision on Motion to Dismiss (Docket # 18) is **DENIED.**