**Robert HOCKEY, On Behalf of Himself and All Others Similarly Situated, Plaintiff,**

**v.**

**Ajit K. MEDHEKAR, et al., Defendants.**

**No. C–96–0815 MHP.**

United States District Court,
N.D. California.

July 11, 1996.

William S. Lerach, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, Richard S. Schiffrin, Michael D. Craig, Schiffrin & Craig, Ltd., Bala Cynwyd, PA, for Robert Hockey.

Norman J. Blears, Joyce M. Cartun, Heller Ehrman White & McAuliffe, Palo Alto,

CA, Gregory E. Barton, Alliance Semiconductor Corporation, San Jose, CA, for Ajit K. Medhekar, Sid Agrawal, C.N. Reddy, C.N. Reddy Investments, Inc., N. Damodar Reddy, Alliance Semiconductor Corp.

Norman J. Blears, Joyce M. Cartun, Heller Ehrman White & McAuliffe, Palo Alto, CA, for N.D.R. Investments, Inc., Ronald K. Shelton.

## OPINION

PATEL, District Judge.

Plaintiff Robert Hockey ("Hockey") brought this action on behalf of himself and all others similarly situated against various defendants in connection with the purchase and sale of common stock in Alliance Semiconductor Corporation. The complaint contains a single claim of securities fraud under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and accompanying Rule 10b–5, and controlling persons allegations under section 20 of that Act, 15 U.S.C. § 78t(a).

Now before the court is defendants' motion for partial reconsideration of the court's May 16, 1996 order.

## BACKGROUND

The May 16 order granted defendants' application for leave to file a motion to dismiss, but declined to stay disclosures under section 21D(b)(3)(B) of the Private Securities Litigation Reform Act of 1995 ("PSLRA" or "the Act") (codified at 15 U.S.C. § 78u–4(b)(3)(B)), finding that the Act does not affect disclosures required by the Federal Rules of Civil Procedure and the Civil Local Rules of this District.[1]

On May 17, 1996, defendants filed their motion to dismiss. On May 24, 1996, defendants filed an ex parte motion for a stay, pending appellate review, of the portion of the May 16 order regarding section 78u–4(b)(3)(B). This court treated that motion as a request for leave to file a motion for reconsideration of the May 16 order and, since the court had issued its order without the benefit of briefing from the parties, granted reconsideration. The court also stayed all disclosures required by the Federal Rules of Civil Procedure and the Local Rules pending the resolution of the motion for reconsideration. On June 4, 1996, defendants filed their papers in support of partial reconsideration of the May 16 order, and on the same date, plaintiff filed his opposition.

## DISCUSSION

### A. Question Presented

Section 78u–4(b)(3)(B) provides:

In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 78u–4(b)(3)(B). The issue now before the court is one of statutory construction of the new Act, namely whether the phrase "discovery and other proceedings" includes disclosures required by Rule 26 of the Federal Rules of Civil Procedure.[2]

### B. Principles of Statutory Construction

 The court must start with the cardinal canon of statutory construction that Congress "says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l. Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391 (1992). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete'". *Id.* at 254, 112 S.Ct. at 1149 (quoting *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981)). In the same term that it decided *Germain* the Supreme Court noted in anoth-

---

1. Because the Federal Rules of Civil Procedure address the issue raised by defendants it is unnecessary to reach the effects of the Civil Local Rules.

2. The court deals only with the amendment to the 1934 Act although a similar amendment was made to the Securities Act of 1933. That statute is not invoked in the complaint in this action. However, the amendment contains the same language and has the same purpose. Therefore, it should be given the same interpretation as the amendment to the 1934 Act.

er statutory construction case that when the statutory language is clear, any further inquiry should occur only in the "most extraordinary circumstance". *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992). Congress is deemed to know the meaning of the words and phrases it uses in its enactments and terms having recognized meanings should be given those meanings.

### 1. *"Discovery"*

■ Defendants argue that the disclosures required by Federal Rule 26(a)(1) and Local Rule 16–5 are "discovery" within the meaning of section 78u–4(b)(3)(B). It appears to the court, however, that the term "discovery" used in subparagraph (B) does not necessarily encompass "disclosure".

The notion of disclosure first made its way into the Federal Rules of Civil Procedure in 1993 when the Advisory Committee on Civil Rules ("the Committee") presented to the Judicial Conference and the Conference adopted amendments to the Rules. Among the rules amended was Rule 26, requiring a duty to disclose certain information specified in the Rule without waiting for formal discovery to commence. Thus, the term "disclosure" was born. Congress approved the 1993 amendments and they became effective December 1, 1993.

Prior to those amendments, except in a few districts operating under the rules of a pilot program, the procedure by which pretrial information was obtained and exchanged was termed "discovery". Rule 26 and related rules provided for various discovery devices, all of which were formal and conducted in an adversarial, often contentious, setting. Indeed, the Advisory Notes since 1980 are replete with references to the abuses of discovery, the delay attributed to it and the excessive costs it involved. *See* Fed.R.Civ.P. 26 advisory committee's notes (1980, 1983, 1993). To alleviate some of these problems the Committee revamped Rule 26 to require

an early exchange of certain information enumerated in Rule 26(a)(1). The Committee clearly stated that the major purpose of the revision was to "accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information...." Fed.R.Civ.P. 26 advisory committee's notes (1993). It intended to dispense with the burdens of discovery and, in the Committee's own words, to "eliminate certain discovery, [and] help focus the discovery that is needed". *Id.*

The 1993 amendments to Rule 26 were extensively debated by the bar, the Committee and before the Supreme Court. Rule 26 was also fully debated in Congress where opposition to the new disclosure requirements was substantial. *See* 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2053 (1994). Ultimately, Congress approved the present Rule.[3] The court assumes, therefore, that Congress is fully cognizant of the difference between the terms "discovery" and "disclosure"—terms they debated and concepts they approved only two years before it adopted the Private Securities Litigation Reform Act.[4]

Rule 26 makes a clear distinction between "disclosure" and "discovery". "Disclosure" refers to those materials and information to be turned over "without awaiting a discovery request". Fed.R.Civ.P. 26(a)(1). The term "disclosure" is used throughout the Rule to identify information to be turned over automatically without recourse to formal procedures. Fed.R.Civ.P. 26(a)(2)–(4). "Discovery" is used to refer to the formal method of obtaining information through requests. The Rule also provides for the planning, timing and sequencing of "discovery". Rule 16 carefully parses the difference between the two terms and uses them consistently with the meanings indicated in Rule 26. "Disclosure" is treated differently from "discovery" throughout the Rules because it is, in fact,

---

**3.** The House of Representatives attempted to delete the changes to Rule 26(a)(1) by passing H.R. 2814, 103rd Cong., 1st Sess. (1993). However, the Senate failed to act on the House bill and the Rule automatically went into effect December 1, 1993, pursuant to 28 U.S.C. section 2074(a).

**4.** If the House, or the Senate, felt so strongly about Rule 26(a)(1) disclosures in 1995 in the context of securities litigation, it could have so stated in the Act.

different. *See In re Lotus Dev. Corp. Secs. Litig.*, 875 F.Supp. 48, 49–50, 53 (D.Mass. 1995) (treating disclosure and discovery as distinct concepts).[5]

This court must presume that when Congress used the term "discovery" in the Act it was fully aware of its most recent amendments to the Rules which distinguish the term "discovery" from "disclosure". It is true that in adopting the Act Congress was concerned about the expense and burden of private securities class actions and, therefore, adopted provisions for an early attack on the pleadings. In that vein, Congress also wanted to put a halt to expensive and burdensome discovery until the court had considered whether the pleadings met the muster required by the new Act. However, in reconciling this motive with the actual language of the statute the court must presume Congress meant what it said. The term "discovery" finds its meaning in, and only in, the Federal Rules of Civil Procedure. Congress did not define the term "discovery" in the Act nor did it interpret Rule 26 differently, something it surely could have done as it did by providing different requirements for Rules 9(b) and 23. Furthermore, Congress could have used both of the terms "discovery" and "disclosure" in the Act. It did none of these things. If Congress so intended it can amend the Act to clarify its intent. That is not a job for this court.[6] Therefore, the court finds that the term "discovery," as used in the Act, does not encompass the disclosures required by Rule 26 or Local Rule 16–5.

### 2. *"Other Proceedings"*

Defendants also argue that the term "other proceedings," as used in subparagraph (B), includes the disclosures mandated by

---

**5.** *Lotus* was decided before PSLRA was enacted and examined the interplay between Rule 12 and the amended Rule 26. The court was dealing with two different but interrelated rules in a context where the court had discretion to stay discovery or disclosure in keeping with the overall purpose of the Rules. Thus, the court was not dealing with an explicit provision adopted by Congress and attempting to interpret it in light of earlier versions of the rules.

The *Lotus* court's observation, however, is noteworthy here: "to make a stay [of disclosure] more readily obtainable simply because there is a colorable motion to dismiss, would undermine the spirit of the new rule, and vindicate the critics who cried that the reform was bound to balloon motion practice by introducing new ambiguities that would be seized upon by lawyers trained to operate in an adversarial system." 875 F.Supp. at 51.

**6.** Defendants urge the court to look at the legislative history. This is not appropriate where the term used is a term of art and has a clear, unambiguous meaning, as is the case with the term "discovery".

However, even a glance at the legislative history demonstrates that it provides no aid to defendants' argument as it repeatedly refers only to "discovery" and its abuses. Nowhere is any mention made of "disclosure". *See* 141 Cong. Rec. S19060 (daily ed. Dec. 21, 1995) (*statement of Sen. Faircloth*); 141 Cong. Rec. S19146 (daily ed. Dec. 22, 1995) (selected bill provisions of the Conference Report to H.R. 1058/S. 240); 141 Cong. Rec. H13691 (daily ed. Nov. 28, 1995) (Joint Explanatory Statement of the Committee of Conference).

The Joint Explanatory Statement of the Committee of Conference provides as rationale for the stay provision in subparagraph (B) the costs and abuse of discovery, the plaintiff's search through company documents and the "endless depositions". None of these are incidents of disclosure; they relate to discovery. The courts and others critical of the abuses in pretrial procedures talk about abuse in terms of discovery, not disclosure. Indeed, disclosure was intended as an antidote to discovery abuse, providing a clear delineation of the limited information to be disclosed at the outset in order to minimize costs and discovery battles. Disclosure does not involve the plaintiff's rummaging through the company's documents; it involves the defendant providing copies or descriptions of documents. Depositions are not a part of disclosure; they are a part of discovery.

In fact, the Conference Report specifically uses the term "discovery", which is reflected in quotes in the Congressional Record, as in "stay of discovery". 141 Cong. Rec. S19151 (daily ed. Dec. 22, 1995) (*selected provisions of the Conference Report to H.R. 1058/S. 240*). The Report goes on to say:

This "stay" provides the defendants with the opportunity to have a motion for a dismissal considered prior to the plaintiffs' lawyers beginning "discovery". This *discovery* usually consists of *requests* for voluminous documents and time consuming *depositions* of company CEOs and other key employees.

*Id.* (emphasis added).

These and other Congressional comments, appended to defendants' motion, do not appear to describe disclosure. They do describe discovery, however. Contrary to defendants' argument, perhaps Congress really did mean what it said.

Rule 26 and Local Rule 16–5. This interpretation also is unavailing.

 "[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974); *see also Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, —— U.S. ——, ——, 115 S.Ct. 2322, 2326, 132 L.Ed.2d 462 (1995). As the Supreme Court has noted:

> "A new statute will not be read as wholly or even partially amending a prior one unless there exists a positive repugnancy between the provisions of the new and those of the old that cannot be reconciled.... This principle rests on a sound foundation. Presumably Congress had given serious thought to the earlier statute.... Before holding that the result of the earlier consideration has been repealed or qualified, it is reasonable for a court to insist on the legislature's using language showing that it has made a considered determination to that end...."

*Regional Rail Reorganization Act Cases*, 419 U.S. 102, 134, 95 S.Ct. 335, 354, 42 L.Ed.2d 320 (1974) (quoting *In re Penn Cent. Transp. Co.*, 384 F.Supp. 895, 943 (Regional Rail Reorg.Ct.1974)).

Defendants ask this court to read the Act as amending Rule 26 so that when a motion to dismiss is pending in a securities case, disclosure is stayed as an "other proceeding". However, the ambiguity of the phrase "other proceedings" compels the court to decline to conclude that Congress "clearly" intended to amend the disclosure requirements of Rule 26. The plain meaning of "other proceedings" does *not* bring the disclosure requirements of Rule 26 to mind. Indeed, one would be hard pressed to designate disclosure a "proceeding." Disclosure does not invoke the court's participation such as a motion, petition or some other device necessitating a hearing or court activity. Unlike the procedures suggested by the term "proceeding", disclosure is informal. Furthermore, if "proceedings" were read to encompass disclosure, it would not have been necessary to also use the word "discovery". Congress merely could have said "all proceedings shall be stayed". It is axiomatic that the court

should avoid reading the statute in such a way as to make terms redundant. For the reasons stated above this court discerns no "positive repugnancy" between the provisions of Rule 26(a)(1) and section 78u–4(b)(3)(B).

 Defendants emphasize the lack of Congressional clarity reflected in section 78u–4(b)(3)(B) by citing to legislative history to illustrate Congress's intent in passing the Act. Legislative history, however, fails to satisfy the mandate that Congress make plain its intention to qualify a law if it wishes courts to interpret a later statute as amending an earlier one. When a statute is enacted, the statute's words themselves must demonstrate Congress's intent to qualify an earlier statute. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 528, 109 S.Ct. 1981, 1994, 104 L.Ed.2d 557 (1989) (Scalia, J., concurring) ("The meaning of terms on the statute books ought to be determined" by the interpretation that is "(1) most in accord with context and ordinary usage, and ... (2) most compatible with the surrounding body of law into which the provision must be integrated.... I would not permit any ... historical and legislative material ... to lead me to a result different from the one that these factors suggest.").

The phrase "other proceedings" fails to meet the criteria this court must consider to find that section 78u–4(b)(3)(B) amends the disclosure provisions of Rule 26 and Local Rule 16–5.

*CONCLUSION*

For the foregoing reasons, the court hereby DENIES defendants' motion for partial reconsideration.

At the hearing, the court indicated that it would stay all disclosures required by Rule 26 and Local Rule 16–5 while the defendants sought appellate review of this order. Upon further consideration, the court declines to continue the stay. To do so would be inconsistent with the reasoning set forth in this order and contrary to the spirit of the disclosure requirement.

IT IS SO ORDERED.