In re Cabletron Systems                    CV-97-549-SD  12/23/98  P
                    UNITED STATES DISTRICT COURT FOR THE

                        DISTRICT OF NEW HAMPSHIRE


In re Cabletron Systems, Inc.
Securities Litigation                          Civil No. 97-542-SD


                              O R D E R

     The consolidated amended complaint in this class action suit

alleges violations of sections 10(b) and 20(a) of the Securities

Act of 1934, 15 U.S.C. §§ 78(j), and Rule 10-b-5 on behalf of the

class of investors who purchased common stock in defendant

Cabletron Systems, Inc., between March 3, 1997, and December 2,

1997.  The complaint alleges that defendant Cabletron and its

officers and directors, faced with significant financial

problems, engaged in fraudulent practices to conceal Cabletron's

precarious financial condition, and thereby misled the investing

public.  Currently before the court is defendants' motion to

dismiss the complaint for failure to plead with sufficient

particularity under Federal Rule of Civil Procedure 9(b) and the

recently enacted Private Securities Litigation Reform Act, 15

U.S.C. § 78u-4, to which plaintiffs object.[1]

_____

     [1]Defendants have requested oral argument.  The court,
however, does not believe oral argument would be helpful at this
stage of the litigation.

## Background

Defendant Cabletron is a New Hampshire corporation in the business of manufacturing and selling networking hardware and software for large enterprise computer networks. The individual defendants, Craig R. Benson, S. Robert Levine, David J. Kirkpatrick, Christopher J. Oliver, Paul R. Duncan, Donald F. McGuinness, and Michael D. Myerow, were all officer or directors of Cabletron. Plaintiffs were appointed as lead plaintiffs to represent investors who purchased shares of Cabletron, bought call options, or sold put options between March 3, 1997, and December 2, 1997. See Order of Mar. 3, 1998.

After a period of growing revenues leading to a dramatic increase in the price of its common stock, Cabletron began to experience slower growth in the latter half of 1996. According to plaintiffs, the following adverse factors precipitated the company's decline:

> *Lengthening Selling Cycles:* Large companies and other institutions (*i.e.* typical customers for networking products) were increasingly reluctant to commit significant resources to major networking projects due to uncertainty as to which networking technologies would be dominant in the future. As a result, Cabletron's "selling cycles" were being stretched out as customers spent more time evaluating their networking requirements and competing technologies.
>
> *Problems Stemming From The Cancellation Of The Company's Relationship with Cisco Systems:* Although it had enjoyed a strong relationship with Cisco (the recognized leader and dominant firm in

2

networking technology), the Company inexplicably terminated this relationship in late 1996. This termination led to a drastic decline in Cabletron's sales of core networking products and services, as Cabletron customers lost the ability to utilize Cisco's superior customer service support services.

*Market Saturation:* Cabletron was also experiencing increased saturation in its markets because the need (and resulting demand) for its proprietary technology and products was slowing as Cabletron's principal customers, which previously needed this technology, either acquired it or were increasingly inclined to acquire competitive systems from other manufacturers (such as Cisco) that offered similar products, frequently at better prices.

*Product Defects:* Cabletron was receiving customer complaints for shipping products that were defective or suffered from programming "bugs." Cabletron engineers were aware that the Company was shipping defective product.

*Production Problems With the Company's "SmartSwitch" Product Line:* During the Class Period the Company experienced significant production problems involving its highly-touted SmartSwitch products--including wiring defects that required almost every SmartSwitch manufactured from April through at least September 1997 to be painstakingly re-wired by hand--thereby precluding large-scale SmartSwitch sales during most of calendar year 1997.

*Loss of Prospective SmartSwitch Customers:* Due to its inability to commence large-scale production of SmartSwitch products, numerous entities that had placed orders for thousands of SmartSwitches eventually canceled those orders, resulting in loss of material revenues and potential new customers.

*Problems in Cabletron's European Operations and Sales:* Cabletron's European sales force was in disarray, severely hindering the Company's ability

3

> to achieve sales in that valuable market. These
> problems escalated during the Class Period,
> ultimately resulting in the termination and
> replacement of the Company's three senior European
> sales managers.
>
> *Pricing Problems:* As the Company's management
> became distracted with the foregoing problems,
> during the Class Period Cabletron's prices for its
> products fell grossly out of line with those of
> its competitors, resulting in bitter customer
> complaints and causing the Company's already
> uncompetitive products to suffer further declines
> in sales.

Plaintiff's Amended Memorandum (document 33) at 8-9.

Plaintiffs' allegations revolve around defendants' response to these events. Specifically, plaintiffs allege that defendants engaged in improper accounting practices designed to artificially inflate revenue, including recognizing revenue on fictitious sales, inducing its distributors and resellers to accept inflated shipments of products by permitting them to return products at any time for any reason, and prematurely recognizing revenue on legitimate orders. Plaintiffs further allege that Cabletron continued to issue optimistic statements that were materially misleading given the adverse factors known to the company. In particular, plaintiffs allege that Cabletron issued a press release announcing the availability of the company's new SmartSwitch products, despite production problems that impeded its ability to make the products available.

4

On June 2, 1997, Cabletron announced that it expected revenues for the first quarter of its fiscal year 1998 to be well below earlier projections, and disclosed that it was experiencing delays in production of the SmartSwitch product line. The following day, the price of Cabletron common stock declined by more than 33 percent. Despite this announcement, plaintiffs allege that Cabletron continued to mislead investors by withholding the true extent of Cabletron's problems. On December 2, 1997, Cabletron again announced that its performance would be below expectations. In addition to announcing that third-quarter earnings would be below expectations, Cabletron declared that it would be taking a charge of between $25 and $30 million. After this announcement, the price of Cabletron common stock further declined to a low of $15.6875, representing a total decline of approximately 67 percent from the class period high of $46.50.

Plaintiffs also allege that the individual defendants profited from the artificially inflated stock price during the class period.

## Discussion

### 1. Standard for Dismissal

#### a. Federal Rules of Civil Procedure

When a court is presented with a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), "its task is necessarily a

limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A motion to dismiss pursuant to Rule 12(b)(6) requires the court to review the complaint's allegations in the light most favorable to plaintiffs, accepting all material allegations as true, with dismissal granted only if no set of facts entitles plaintiffs to relief.  See, e.g., Scheuer, supra, 416 U.S. at 236; Berniger v. Meadow Green-Wildcat Corp., 945 F.2d 4, 6 (1st Cir. 1991); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).

In the context of a motion to dismiss a claim of fraud or misrepresentation, however, the claim must also meet the special pleading requirements of Fed. R. Civ. P. 9(b).  See Romani v. Shearson Lehman Hutton, 929 F.2d 875, 878 (1st Cir. 1991); Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985).  Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).  The United States Court of Appeals for the First Circuit "has been 'especially rigorous' in applying Rule 9(b) in securities fraud actions 'to minimize the chance that a plaintiff with a largely groundless claim will bring a suit and conduct extensive

discovery in the hopes that the process will reveal relevant evidence.'" Maldonado v. Dominguez, 137 F.3d 1, 9 (quoting Shaw v. Digital Equipment Corp., 82 F.3d 1194, 1223 (1st Cir. 1996); Romani v. Shearson, Lehman, Hutton, 929 F.2d 875, 878 (1st Cir. 1991)). Under Rule 9(b), a party alleging fraud must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Suna v. Bailey Corp., 107 F.3d 64, 68 (1st Cir. 1997) (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1127 (2d Cir. 1994)). This standard, however, does not require a plaintiff to prove his or her case at the pleading stage. "While Fed. R. Civ. P. 9(b) proscribes the pleading of 'fraud by hindsight,' we also cannot expect plaintiffs to plead 'fraud with complete insight' before discovery is complete." Maldonado, supra, 137 F.3d at 9 (quoting Shaw, supra, 83 F.3d at 1225).

b. The Private Securities Litigation Reform Act

To curb perceived abuse in private securities lawsuits, Congress enacted the Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. § 78u-4. Congress sought to combat unfounded litigation by "establish[ing] uniform and more stringent pleading requirements." H.R. Conf. Rep. 104-369, at 41 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 740. The heightened

7

pleading standards require plaintiffs whose claims are based upon information and belief to "state with particularity all facts on which that belief is formed," and provide that when a claim requires scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."

## 2. Pleading on Information and Belief

Defendants contend the complaint must be dismissed because it violates the PSLRA's requirement that allegations based upon information and belief be supported by the facts upon which that belief is formed. Plaintiffs counter that the PSLRA's requirement does not apply to complaints, such as theirs, that are based upon investigation of counsel. Because this issue affects the entire complaint and is potentially dispositive, the court will address it first. See 15 U.S.C. § 78u-4(b)(3)(A) ("[T]he court shall . . . dismiss the complaint if the requirements of paragraphs (1) and (2) are not met.").

The relevant paragraph of the complaint states:

> Plaintiffs . . . make the following allegations against defendants upon information and belief (except as to allegations specifically pertaining to plaintiffs and their counsel, which are based on personal knowledge) based upon the thorough investigation conducted by and under the supervision of plaintiffs' counsel, which included reviewing and analyzing all information and financial data relating to the relevant time

8

> period obtained from numerous public and
> proprietary sources (such as LEXIS-NEXIS, Dow
> Jones and Bloomberg), including, _inter alia_, SEC
> filings, publicly available annual reports, press
> releases, published interviews, news articles and
> other media reports . . . and reports of
> securities analysts and investor advisory
> services, in order to obtain the information
> necessary to plead plaintiffs' claims with
> particularity.  Plaintiffs also consulted
> extensively with individuals who are knowledgeable
> about the business and operations of defendant
> Cabletron and the industry and markets in which
> Cabletron operates.  Except as alleged in this
> Complaint, the underlying information relating to
> defendants' misconduct and the particulars thereof
> are not available to plaintiffs and the public and
> lie exclusively within the possession and control
> of defendants and other insiders of the defendant
> corporation . . . .  Plaintiffs believe that
> further substantial evidentiary support will exist
> for the allegations set forth below after a
> reasonable opportunity for discovery.

Second Consolidated Amended Complaint (document 24), Introductory

Paragraph (unnumbered).  Courts have considered the impact of the

PSLRA on complaints employing similar language with differing

results.  Compare Novak v. Kasaks, 997 F. Supp. 425, 431

(S.D.N.Y. 1998) (stating that complaint failed to provide

supporting facts required by PSLRA), and In re Silicon Graphics

Securities Litig., 970 F. Supp. 746, 763 (N.D. Cal. 1997) (same),

with Warman v. Overland Data, Inc., No. 97CV833JM, 1998 WL 110018

*3 (S.D. Cal. 1998) (holding plaintiffs not required to meet

particularity standard regarding allegations on information and

belief when complaint based on investigation of attorney).

Accordingly, the court is called upon to determine when the

9

PSLRA's requirement relative to information and belief is triggered.

The PSLRA contains no definition of "information and belief." BLACK'S LAW DICTIONARY 779 (6th ed. 1990), defines "information and belief" as "[a] standard legal term which is used to indicate that the allegation is not based on the firsthand knowledge of the person making the allegation . . . ." Thus this definition would include allegations based upon investigation of counsel within the definition of "information and belief." See In re Silicon Graphics, supra, 970 F. Supp. at 763 ("Because the sources set forth in [the complaint] do not provide plaintiffs with personal knowledge, the complaint must be based on information and belief--that is the only alternative."); see also Cadle Co. v. Hayes, 116 F.3d 957, 961 (1st Cir. 1997) (contrasting statements made on information and belief with those based on personal knowledge). Given the well-established meaning of the phrase "information and belief," the court finds no reason to look further in interpreting the statute. See United States v. Rivera, 131 F.3d 222, 224 (1st Cir. 1997) ("The well established approach to statutory construction begins with the actual language of the provision. When the 'plain meaning' is clear on its face, 'the sole function of the courts is to enforce it according to its terms.'" (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917))).

Furthermore, the notion that the PSLRA requirements can be satisfied by adding the phrase "investigation of counsel" to allegations based on information and belief is inconsistent with the intent behind the provision. Congress debated the degree of specificity that should be required, with opponents of the current provision expressing concern that plaintiffs "must literally, in [their] pleadings, include the names of confidential informants, employees, competitors, Government employees, members of the media, and others who have provided information leading to the filing of the case." 141 Cong. Rec. H2849 (Mar. 8, 1995) (statement of Representative Dingell). Despite this concern, Congress rejected a proposed amendment that would have required plaintiffs merely to plead facts that support their beliefs. See In re Silicon Graphics, 970 F. Supp. at 764 (citing 141 Cong. Rec. H2848 (Mar. 8, 1995)). Thus, the court concludes, this provision cannot be satisfied merely by stating that the complaint is "based upon the thorough investigation conducted by and under the supervision of plaintiffs' counsel, which included reviewing and analyzing all information and financial data relating to the relevant time period obtained from numerous public and proprietary sources (such as LEXIS-NEXIS, Dow Jones and Bloomberg), including, inter alia, SEC filings, publicly available annual reports, press releases, published interviews, news articles and other media reports . . . , and

11

reports of securities analysts and investor advisory services . . . ." Complaint, introductory paragraph.  See <u>In re Health Management Systems, Inc., Securities Litigation</u>, No. 97 Civ. 1865, 1998 WL 283286 (S.D.N.Y. June 1, 1998) (finding similar allegation insufficient under PSLRA); <u>Novak</u>, <u>supra</u>, 997 F. Supp. at 421 (same); <u>In re Silicon Graphics</u>, <u>supra</u>, 970 F. Supp. at 763-64 (same).  Accordingly, the court will  grant plaintiffs leave to amend the complaint.  Such amendment must specify, as to each allegation, the facts that support plaintiffs' belief.

Because plaintiffs' ability or inability to state with particularity the facts on which their beliefs are founded is potentially dispositive, the court will not address defendants' additional arguments at this juncture.  If plaintiffs are unable to provide specific facts supporting some or all of their beliefs, they should omit claims based on those beliefs from the amended complaint.  Although the heightened pleading requirement necessitates a high level of detail, the standard does not elevate quantity over quality.  In amending the complaint, it will behoove plaintiffs to focus on the facts central to their complaint.

<u>Conclusion</u>

Plaintiffs are herewith allowed thirty days from the date of this order in which to amend their complaint.  In the event that

12

no amendment is filed, defendants' motion to dismiss (document 28) will be granted.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

December 23, 1998

cc:  All Counsel