**M & I HEAT TRANSFER PRODUCTS, LTD., Plaintiff,**

v.

**Herbert WILLKE, Jr., HVAC–21, Inc., Anthony Della Pena, Positive Seal Dampers, Inc., Coolbreeze Air Conditioning & Heating, Ltd., M/A–Com, Inc., Erland Construction Company, and other presently unknown individuals and companies who have done business with or for Herbert Willke, Jr., HVAC–21, Inc., or Dimiter Gorchev on and after February 27, 1997, Defendants.**

**No. CIV.A.00–CV–10791MEL.**

United States District Court, D. Massachusetts.

Feb. 13, 2001.

Eric S. Kupperstein, Kupperstein & Kupperstein, PC, Lewis Warf, Boston, MA, for M & I Heat Transfer Products Ltd.

Lawrence J. Casey, Perkins, Smith & Cohen, Boston, MA, John R. Mayer, Perkins, Smith & Cohen, Boston, MA, for Herbert Willke, Jr.

Rudolph F. Pierce, Jennifer L. Mina, Goulston & Storrs, Boston, MA, for HVAC–21, Inc., Positive Seal Dampers

Inc., Coolbreeze Air Conditioning & Heating Ltd.

Thomas F. Holt, Jr., Tracy E. Thomas, Kirkpatrick & Lockhart LLP, Boston, MA, for M/A–Com, Inc.

Robert V. Lizza, Sherburne, Powers & Needham, Boston, MA, for Erland Construction, Inc.

## MEMORANDUM AND ORDER

LASKER, District Judge.

M & I Heat Transfer Products, Ltd. ("M & I"), sues the defendants for their involvement in alleged unfair business practices that M & I contends entitles it to remedies under state tort, contract and corporate law and the federal Racketeer Influenced and Corrupt Organizations Act ("RICO").[1] Pursuant to Fed.R.Civ.P. 12(b)(1), the defendants move to dismiss for lack of subject matter jurisdiction. The plaintiff responds by moving under Fed.R.Civ.P. 15(a) for leave to amend the complaint. The defendants' motion to dismiss is granted and the plaintiff's to amend is denied.

### I.

This case arises out of an earlier lawsuit brought in this court by M & I against defendants Gorchev, Willke and their related companies, including Mitco Space Gain, Inc., *M & I Heat Transfer Products, Ltd. v. Dimiter Gorchev et al.,* No.1993–CV–12777–MEL. A judgment obtained by M & I in its first lawsuit resulted in Mitco's bankruptcy on July 7, 1998. During the bankruptcy proceeding, M & I agreed to settle its claims against Mitco in exchange for an assignment of all Mitco's assets including "any and all of its contracts and contract rights and jobs ... causes of action and rights against others." *Complaint,* Exhibit A, § 1(b)-(c).

Although M & I's amended complaint consists of thirty separate, sometimes virtually incomprehensible, counts, the wrongful conduct alleged by M & I can be summed up with some certainty as follows: after Gorchev and Willke learned of the judgment against Mitco in the first lawsuit, they intentionally devised a scheme to divert revenue away from Mitco, bankrupt the company and prevent M & I from collecting its judgment; to further this scheme, Gorchev and Willke created HVAC–21, a company which would deal with Della Pena, the owner of Coolbreeze Air Conditioning & Heating Ltd., a Canadian company which had manufactured for Mitco in the past; Gorchev, Willke and Della Pena, through their various companies, then entered into an arrangement which would enable them to usurp Mitco's existing (formal and informal) contracts with various companies *at that time* and sell Mitco's products under HVAC–21's name, thereby diverting profits from Mitco; Della Pena wilfully participated in this scheme; because of the defendants' scheme, Mitco went bankrupt; M & I then received Mitco's assets in the bankruptcy proceeding which were lessened by the defendants' scheme; at no time, did Gorchev, Willke, or any other defendant, enter into a covenant not to compete while employed at, or working with, Mitco.

Although the language of M & I's amended complaint alleges some sort of "continuing" and far-reaching scheme to defraud Mitco (and now M & I) in an unspecified manner, the allegations do not provide a factual basis for this claim. In fact, the amended complaint only provides details about two events occurring over only a few months to support the plaintiff's theory of an alleged "scheme." First, the amended complaint refers to a cryptic, unsigned and undated "agreement" purportedly entered into on February 27, 1997, between Gorchev, Willke and Della Pena which provided that "all *current* jobs like M/A–Com etc. are Mitco's." *Complaint,* Exhibit C (emphasis added). Presumably, the importance which the plaintiff attaches to this written statement is that it purport-

---

**1.** Racketeer Influenced and Corrupt Organi- zations Act, 18 U.S.C. §§ 1961–1968.

edly memorializes a scheme to interfere with Mitco's existing and prospective contractual relations which existed at that time and split the profits. Second, the amended complaint alleges that the "M/A–Com job," a project installing air conditioning units as a subcontractor for the Erland Construction Company: "belonged to" Mitco due to its prospective or actual contractual relationship with Erland; was performed in the Summer of 1997, by HVAC–21; and "Mitco's profits" were then split among the defendants in accordance with the unsigned "agreement."

## II.

### Subject Matter Jurisdiction

M & I argues that the court has subject matter jurisdiction because either: (1) diversity of citizenship exists (28 U.S.C. § 1332); or (2) there is a federal question (28 U.S.C. § 1331).

### A. Diversity

■ The defendants argue that diversity jurisdiction is not "complete" because M & I (the plaintiff), Della Pena and Coolbreeze (defendants) are all citizens of Canada.

M & I responds that even if diversity jurisdiction is partially incomplete, the court can exercise "supplemental jurisdiction" over the non-diverse defendants.

■ The defendants motion is granted. In *Strawbridge v. Curtiss,* 7 U.S.(3 Cranch) 267, 2 L.Ed. 435 (1806) (*overruled on other grounds, Louisville, Cincinnati & Charleston R. Co. v. Letson,* 43 U.S. (2 How.) 497, 555, 11 L.Ed. 353 (1844)), the Supreme Court announced the "complete diversity" rule. The complete diversity rule requires that, to maintain a diversity suit in federal court, no plaintiff can be a citizen of the same state as any of the defendants. In *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 580 n. 2, 584, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999), the Supreme Court applied the complete diversity rule to a situation in which both the plaintiff

and the defendant were foreign citizens. Not surprisingly, the Supreme Court noted that the foreign citizenship of both the plaintiff and the defendant rendered diversity incomplete. *Ruhrgas* is controlling. Because M & I (the plaintiff), Della Pena (a defendant) and Coolbreeze (another defendant) are all foreign citizens, diversity is incomplete.

### B. Federal Question Jurisdiction

■ The sole federal question presented by M & I's amended complaint is whether the defendants' purported actions violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. "To state a RICO claim under section 1962(c), a plaintiff must allege each of the four elements required by the statute: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Efron v. Embassy Suites (Puerto Rico), Inc.,* 223 F.3d 12, 14 (1st Cir.2000) (citations omitted). M & I's amended complaint does not meet this requirement. Its failure to do so, particularly to adequately allege a "pattern of racketeering activity," requires dismissal of M & I's RICO claim. It follows that, because M & I's RICO claim is insufficient, no federal question jurisdiction exists.

### 1. Has M & I Sufficiently Alleged a RICO "Pattern of Racketeering Activity"?

■ To establish a RICO "pattern," a plaintiff must demonstrate: (1) at least two "predicate acts" of "racketeering activity" within ten years of one another; (2) show "that the predicates are related[;] and [ (3) ] they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

### a. Has M & I Sufficiently Alleged Two Predicate Acts of Racketeering?

■ The definition of "racketeering activity" in RICO includes "any act which is

indictable under any of the following provisions of title 18, United States Code: ... section 1341 (relating to mail fraud), [and] section 1343 (relating to wire fraud)[.]" 18 U.S.C. § 1961(1)(B). M & I alleges that each of the mail and wire transmissions between the defendants regarding the M/A–Com job were acts of mail and wire fraud. As a result, M & I concludes that each of these transmissions form a "predicate act" under RICO.

The defendants respond that none of these invoices and letters are "predicate acts" because they do not involve conduct which is indictable under the mail and wire fraud statutes.

As presented in M & I's proposed amended complaint, the assertion that defendants' actions constituted mail or wire fraud remains unproven, unspecified and tautological in its reasoning. M & I's assertion falls well short of the pleading requirements of Fed.R.Civ.P. 9(b). Rule 9(b) reads, in relevant part: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." In *New England Data Servs., Inc. v. Becher*, 829 F.2d 286 (1st Cir.1987), the Court of Appeals held that Rule 9(b) applied to civil RICO actions alleging mail or wire fraud.

M & I's amended complaint fails to describe with the requisite detail under Rule 9(b): what conduct was fraudulent; why the conduct was fraudulent or unlawful; how the fraudulent conduct was carried out; and when and where the fraudulent conduct took place.

■ However, even though M & I's allegations of fraud are not plead with the requisite particularity, this defect, standing alone, does not necessarily warrant dismissal of its RICO Count. In *Data Servs.*, 829 F.2d at 290, the Court of Appeals held that "dismissal should not be automatic once the lower court determines that Rule 9(b) was not satisfied." The Court explained that dismissal would not be appropriate where the specific information needed to properly plead mail or wire fraud was "likely in the exclusive control of the defendant." *Data Servs.*, 829 F.2d at 290–91. In such a case, the Court held that the correct procedure would be to allow discovery and then provide the plaintiff with an opportunity to amend the defective complaint. *Data Servs.*, 829 F.2d at 290.

Here, dismissal based on M & I's failure to plead "predicate acts" with particularity is appropriate. Although M & I alleges a scheme which is strikingly similar to the scheme alleged by the plaintiff in *Data Servs.*, the crucial difference is that here, the information needed to properly plead fraud is not in the exclusive control of the defendants. In the prior lawsuit and, more importantly, in the bankruptcy proceeding, M & I has had an opportunity for discovery from Gorchev (the former owner of Mitco) about any contracts or prospective contracts which Mitco may have entered into and the status of those contracts. M & I has also received the Mitco Trustee's cooperation and access to Mitco's files from which it could have determined if any contracts (either existing or prospective), were being "stolen," by whom, and in what manner. M & I's inability to plead "predicate acts" with the particularity required by Rule 9(b), even given this degree of access, warrants the dismissal of its RICO count. *See Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 42 (1st Cir.1991) (holding that plaintiff's civil RICO pleading was properly dismissed because it failed to specify when and where the alleged fraud took place in violation of Rule 9(b)).

*b. Has M & I Shown that the Alleged Acts are Related?*

■ Predicate acts are related if they have the "same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240, 109 S.Ct. 2893. "A fact-specific allegation of a single common scheme can be

used to satisfy the relatedness requirement." *Feinstein*, 942 F.2d at 44–45.

The defendants argue that the plaintiff has not set forth a fact-specific allegation of a single common scheme.

M & I has not shown predicate acts which are "related." The only incident set forth with any specificity in M & I's amended complaint is its claim that the defendants defrauded Mitco out of the "M/A–Com" deal. M & I has not shown how this alleged fraudulent transaction occurred, much less, how it is interrelated with other alleged fraudulent conduct or that it is anything more than an isolated event. *See Feinstein*, 942 F.2d at 44–45 (dismissing a civil RICO claim because the plaintiff failed to show that two specifically pleaded episodes nearly two years apart were part of a unitary scheme).

### c. Has M & I Demonstrated Either "Open" or "Closed" Continuity?

 " 'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241, 109 S.Ct. 2893.

#### i) Open–Ended Continuity

 M & I alleges that the defendants' "scheme" continues: "the conduct of the defendants ... contemplates a continuous and ongoing threat that defendants will continue to defraud Mitco as they further their scheme with no intention of providing Mitco with its due and payable monies." *Amended Complaint*, 102d.

The defendants respond that the alleged "scheme" cannot support a finding of open-ended continuity because it had a clear and terminable goal (i.e., the destruction of Mitco)—which was achieved on July 7, 1998, when Mitco went bankrupt.

While the defendants' reasoning, that the contracts involved cannot be the basis for open-ended continuity because of Mitco's bankruptcy is unpersuasive, it focus on the finality of the alleged fraudulent conduct is appropriate. Even assuming, as is alleged in the amended complaint, that the defendants, on one occasion in 1997, illegally took a series of Mitco's (now M & I's) contracts, M & I has not shown how this theft could possibly be anything more than a one-time occurrence. Gorchev, Willke and the rest of the defendants were not subject to any covenant(s) not to compete with Mitco. Even assuming that the defendants were to continue to sell products in the same field as Mitco, to Mitco's detriment, this conduct would not be illegal. The alleged scheme had a self-defining end when the defendants were free of any obligations (fiduciary or otherwise) not to compete with Mitco. Accordingly, because "no specific threat of repetition extending *indefinitely* exists" there is no basis for a finding of open-ended continuity. *Efron*, 223 F.3d at 16 (emphasis added) (holding that a similar scheme with a "limited life expectancy" did not establish open-ended continuity).

#### ii) Closed Continuity

 "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. 2893. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. 2893. "Most courts that have found continuity in a closed period did so in cases involving periods of several years." *Efron*, 223 F.3d at 18.

Here, M & I alleges that during one period of time the defendant took a series of contracts and/or prospective contracts from Mitco. The defendants' scheme purportedly began on February, 27, 1997, with the "agreement" to defraud Mitco and as a matter of law had a self-defining end when the defendants were free of any obligations (fiduciary or otherwise) not to compete with Mitco. Even under the most

generous reading of the amended complaint, this "scheme" lasted only seventeen months not the "several years" period which is usually required to state a closed continuity RICO claim.

Another factor weighing against a finding of closed continuity in this case, which was described as "highly relevant" by the Court of Appeals in *Efron*, 223 F.3d at 18, is whether "a defendant has been involved in only one scheme with a singular objective and a closed group of targeted victims." If so, a finding of closed continuity is unlikely. Here, because M & I alleges that the defendants' scheme had one objective—the destruction of Mitco with the intent of targeting a single victim—M & I, a finding of closed continuity is improbable.

As in *Efron*, "the finite nature of the racketeering activities alleged here, together with the relatively modest period of time, cannot ... support a jury finding of a RICO pattern under the closed continuity approach." *Efron*, 223 F.3d at 19 (holding that a pleading which alleged a scheme to defraud certain partners in a hotel venture by causing the hotel to lose money over a 21–month period would not support a finding of closed continuity and was therefore deficient). Accordingly, M & I's RICO claim, as presented in its amended complaint, is without merit.

### III.

The defendants' motion to dismiss for lack of subject matter jurisdiction is granted. Since, as the previous discussion indicates, the amended complaint does not establish a basis for federal jurisdiction, the plaintiff's motion to amend is denied. The case is dismissed.

It is so ordered.