The **ROXBURY/SOUTH END TENANTS' COUNCIL, INC., Plaintiff,**

v.

**CORNERSTONE CORPORATION, Roxse Residences LLC, Linda Evans, Robert L. Evans, Linda Evans, and Paul E. Tryder, Defendants.**

Civil Action No. 07–10655–JLT.

United States District Court, D. Massachusetts.

Aug. 20, 2008.

David J. Fried, Law Offices of David J. Fried, Cambridge, MA, for Plaintiff.

Robert E. McLaughlin, Sr., Gilman, McLaughlin & Hanrahan, LLP, Richard M. Zielinski, Goulston & Storrs, Boston, MA, for Defendants.

## MEMORANDUM

TAURO, District Judge.

The Roxbury/South End Tenants' Council sues Defendants for their alleged involvement in a federal Racketeer Influenced and Corrupt Organizations ("RICO") conspiracy, among other claims. Following Defendant's initial *Motion to Dismiss*, this court instructed Plaintiff to cure various gaps left open in its initial complaint.[1] Plaintiff then filed an Amend-

---

1. *See* Order dated October 10, 2007 [# 21]. The Order specifically requested that Plaintiff include a "full account of the RICO claim, particularly parts (2) and (3) of the Supreme Court's four-part test: '(1) conduct (2) of an enterprise (3) through a pattern of (4) racketeering activity.' " *Id.*

ed Complaint, and Defendants renewed their motion to dismiss under Fed.R.Civ.P. 12(b)(6).

Plaintiff advances one state law claim, and three federal claims against Defendants: (1) conspiracy to racketeer, in violation of 18 U.S.C. §§ 1961(1), 1962(c), and 1962(d); (2) deprivation of tangible property through racketeering, in violation of 18 U.S.C. §§ 1341 and 1963, and the Hobbs Act, 18 U.S.C. § 1951; and (3) deprivation of right to honest services in violation of 18 U.S.C. §§ 1341 and 1963. Since Plaintiff has not pled these claims with sufficient particularity, this court GRANTS Defendants' *Renewed Motion to Dismiss* [# 33] based on Plaintiff's failure to state a claim upon which relief can be granted.

## I. BACKGROUND

### A. Factual Background & Plaintiff's Allegations

Plaintiff Roxbury/South End Tenant Council ("Tenant Council") represents the tenants of a subsidized housing project, Roxse Homes, in Boston, Massachusetts.[2] The Tenant Council owns a 49% interest in the Roxse Residences Limited Partnership ("Partnership").[3] Defendant Roxse Residences LLC ("Roxse Residences") owns a 51 % interest in the Partnership.[4] Defendant Cornerstone Corporation ("Cornerstone") serves as the Managing Agent of Roxse Homes.[5] Defendant Linda Evans ("Linda Evans") worked as Property Manager, or Assistant Property Manager of Roxse Homes, for many years.[6] At present, she is Cornerstone's Property Manager for Roxse Homes.[7] Defendant Robert Evans [8] ("Robert Evans") is a Co–Manager of Roxse Residences and Director and Treasurer of Cornerstone.[9] Defendant Paul Tryder is also a Co–Manager of Roxse Residences, and serves as the Director and President of Cornerstone.[10]

Plaintiff states that the Tenant Council was formed in 1985 to represent the tenants of Roxse Homes.[11] From that time onward, Linda Evans served either as Assistant Property Manager, or Property Manager, of Roxse Homes.[12] Linda Evans also resided in Roxse Homes, and was elected as President of the Tenant Council on February 2, 1993.[13] She was removed from this position, allegedly for cause, on March 7, 1993.[14] Shortly thereafter, she was reelected to the Tenant Council, as a Building Representative, but was again removed, allegedly for cause.[15]

Linda Evans was later elected Vice–President of the Tenant Council in 1996.[16] According to Plaintiff's "information and belief," she "seized effective, permanent control" of the Tenant Council from 1998 until 2005.[17] During this time, Linda Evans allegedly held no elections except for

---

2. Am. Compl. ¶ 1.

3. *Id.* at ¶ 2.

4. *Id.* at ¶ 3.

5. *Id.* at ¶ 4.

6. *Id.* at ¶¶ 13, 17.

7. *Id.* at ¶ 4.

8. Plaintiff alleges that Defendants Robert Evans and Linda Evans have no familial relationship. *See id.* at ¶ 13.

9. *Id.* at ¶ 11.

10. *Id.* at ¶ 12.

11. *Id.* at ¶ 16.

12. *Id.* at ¶ 17.

13. *Id.* at ¶ 23.

14. *Id.*

15. *Id.* at ¶ 24.

16. *Id.* at ¶ 25.

17. *Id.*

officer positions, and appointed directors from time to time.[18] Plaintiff alleges that these appointments violated the Tenant Council's bylaws.[19] Among the alleged violations were the delaying of a scheduled election, holding an election that did not fill most of the seats on the Board of Directors, and forcing the resignation of an elected Secretary.[20]

Upon obtaining "effective control" of the Tenant Council, Linda Evans allegedly conspired with Robert Evans, Paul Tryder and the Cornerstone Corporation to acquire control over Roxse Homes.[21] Plaintiff's Amended Complaint does not clearly spell out how the ownership interest passed. Apparently MassHousing, a Massachusetts state entity that supports home ownership opportunities for low and moderate income residents, determined that the Tenant Council was "democratically elected in accordance with the by-laws."[22] This determination qualified the Tenant Council to serve as a 49% owner of the Partnership under MassHousing's Demo–Dispo program, and to participate in the selection of the 51 % owner.[23]

Plaintiff suggests that only five of twenty-four positions on the Tenant Council's Board of Directors ("Board") were occupied at the time.[24] Of these, three persons had been chosen in an allegedly improper election in 2001, while two others had been appointed by Linda Evans.[25]

Plaintiff alleges that MassHousing's favorable determination had been "induced by the defendant conspirators' fraudulent misrepresentations, in writing, submitted by the instrumentality of the mails and/or wires."[26] Plaintiff specifies three types of submissions: (1) Annual Reports for 2001 and 2002, submitted to the Massachusetts Secretary of State on December 15, 2003; (2) successive Forms 990, submitted to the IRS with no time listed; and (3) Public Charity Reports for 2001 and 2002 submitted to the Division of Public Charities of the Office of the Attorney General on or about December 22, 2003 (collectively, "MassHousing Submissions").[27] Plaintiff alleges that these submissions were fraudulent in that "Linda Evans' decisions were actually those of persons whom she claimed to be officers and directors of the Tenant Council, but who had never been elected."[28] Each submission, Plaintiff theorizes, amounts to a "separate predicate act of mail fraud."[29]

Plaintiff next alleges that Linda Evans, on behalf of the Tenant Council, submitted additional fraudulent reports. These include (1) a Public Charity Report for 2003, filed with the Division of Public Charities of the Office of the Attorney General on or about February 27, 2004; (2) an Annual Report for 2003, submitted to the Office of the Secretary of State on April 8, 2004; (3) and an Annual Report for 2004, submitted to the Office of the Secretary of State on June 13, 2005 (collectively, "Tenant Council Submissions").[30] Plaintiff also alleges

18. *Id.*

19. *Id.*

20. *Id.* at ¶ 26.

21. *Id.* at ¶ 28.

22. *Id.* at ¶ 30.

23. *Id.* at ¶ 29.

24. *Id.* at ¶ 30.

25. *Id.*

26. *Id.* at ¶ 31.

27. *Id.*

28. *Id.*

29. *Id.*

30. *Id.* at ¶ 32.

that copies of these submissions were sent to MassHousing, though it omits dates on which these submissions were allegedly mailed.[31] As with the previous submissions, Plaintiff alleges that these reports falsely misrepresented that "Linda Evans' decisions were actually those of persons whom she claimed to be officers and directors of the Tenant Council, but who had never been elected."[32] Plaintiff again states that each submission "was a separate predicate act of mail fraud."[33]

 Plaintiff also alleges, on information and belief, that Linda Evans obtained the position of Property Manager by illegally and fraudulently manipulating the tenants and the Tenant Council.[34] In addition, Plaintiff alleges that Linda Evans "was further induced to support Cornerstone and Roxse Residences by a cash payment, or may have extorted such payment from Cornerstone and/or Roxse Residences, and/or their principals, Robert Evans and Paul Tryder, as a condition of her support."[35] Plaintiff does not, however, state any specific information, such as "the source of information and the reasons for the belief,"[36] for this alleged extortion.

In 2003, Defendants allegedly installed "Cornerstone as Management Agent, and Linda Evans as the *de facto* Property Manager."[37] From October, 2003 until March, 2004, Linda Evans "had improper access to tenant files, dealt with property contractors, and hired staff of behalf of Cornerstone."[38] Linda Evans, Robert Evans and Paul Tryder executed the Partnership Agreement on February 23, 2004, and Roxse Homes was transferred to the Partnership on March 7, 2004.[39]

At some point in 2004 or 2005—the Amended Complaint does not specify—the Tenant Council records allegedly disappeared.[40] Among the records were documents recording the selection of Cornerstone as General Partner, the transfer of Roxse Homes to the Partnership, the management contract with Cornerstone, documents concerning management operations, and records of how the Board discharged its functions.[41] The Plaintiff further alleges, on "information and belief," that "these documents were deliberately removed and/or destroyed by the defendants."[42] On July 28, 2005, written demand for return of the documents was made.[43]

In his August 3, 2005 response to the demand letter ("First Robert Evans Letter"), Robert Evans allegedly wrote,

With respect to the records of the [Tenant Council], financial or otherwise, I have not been involved in their private affairs and do not think it appropriate for me to be.... Ms. Evans has not

31. *Id.*

32. *Id.*

33. *Id.*

34. *Id.* at ¶ 33.

35. *Id.* at ¶ 34.

36. As the First Circuit has held, "Where allegations of fraud are [explicitly or implicitly] based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief." *See Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 878 (1st Cir.1991) (citations omitted).

37. *Id.* at ¶ 39.

38. *Id.* at ¶ 41.

39. *Id.* at ¶ 42.

40. *Id.* at ¶ 45.

41. *Id.*

42. *Id.* at ¶ 46.

43. *Id.* The Amended Complaint specifies neither who made the demand, nor upon whom it was made.

been a Board member or Officer of the [Tenant Council] for over a year now. She has assured me that the records were in the [Tenant Council's] office when she left.[44]

Plaintiff alleges, without providing any specifics, "This letter was false and intended to mislead; the mailing of it was a predicate act of mail fraud." [45]

Plaintiff also alleges that Linda Evans cut a number of checks, drawn to the order of the National Center for Housing Management, and the United House of Prayer ("Linda Evans checks").[46] Plaintiff alleges, on "information and belief," that the $5,250 check to the National Center for Housing Management covered tuition for Linda Evans' training, and tuition for tenants from Grove Hall, where Linda Evans previously worked as a Resident Services Coordinator.[47] Plaintiff accuses Linda Evans, without providing any details, of "fraudulently misappropriat[ing] Tenant Council funds for her personal use and benefit; that of Cornerstone, her employer; and others." [48]

In addition, Plaintiff claims the checks to the United House of Prayer "were far in excess of the true cost of any services that may have been rendered." [49] Attached to the Amended Complaint, however, are photocopies of only three checks made out to the United House of Prayer, totaling $4,017.50.[50] Plaintiff asserts that the mailing of each of the four checks constitutes a predicate act of mail fraud.[51] But Plaintiff mentions neither when the checks were mailed, nor a factual basis for its assertion that the checks exceeded "the true cost of any services that may have been rendered." [52]

In April, 2004 Linda Evans resigned as President of the Tenant Council, and assumed the position of Property Manager.[53] From then until June, 2005, an "Executive Board"—allegedly comprised of people appointed by Linda Evans, not "duly elected"—ran the Tenant Council.[54] In June, 2005, two elections were held, both of which were supervised by the Attorney General and monitored by disinterested outside observers.[55] The newly elected Board served until October 2007, and filed the instant lawsuit.[56]

The newly elected Board demanded in writing that Cornerstone and Roxse Residences reconsider the propriety of appointing Linda Evans as Property Manager.[57] Plaintiff alleges that "Cornerstone refused the demand." [58] But Robert Evans, then

44. *Id.* at ¶ 47 ("First Robert Evans Letter").

45. *Id.*

46. *Id.* at ¶¶ 50–52.

47. *Id.* at ¶ 51.

48. *Id.*

49. *Id.* at ¶ 52.

50. *See* Ex. F to Pl.'s Am. Compl. [# 22]. The first check, for $600 and dated June 28, 2004, was drawn for the purpose of the "Residents' Mtg." *Id.* at 12. The second check, for $417.50 and dated June 29, 2004, was also drawn for the purpose of the "Residents' Mtg." *Id.* at 13. The third check, for $3,000 and dated September 10, 2004, was drawn for the purpose of "Family Day Catering Partial

Pymt." *Id.* at 33. Both Linda Evans and D'Anthony D.M.T. Clark. co-signed the three checks.

51. Am. Compl. ¶ 53.

52. *Id.* at ¶ 52.

53. *Id.* at ¶ 54.

54. *Id.*

55. *Id.* at ¶ 56.

56. *Id.*

57. *Id.* at ¶ 57.

58. *Id.* at ¶ 58.

Executive Vice President of Cornerstone, responded in writing on September 15, 2005 ("Second Robert Evans Letter").[59] Plaintiff alleges that, in this letter, Robert Evans stated that the decisions to appoint Linda Evans "were ratified by the prior Board and could not be revisited."[60] The letter itself,[61] however, contains nothing to the effect that such decisions cannot be "revisited." Rather, Robert Evans merely noted that Linda Evans "was hired after consultation with and approval from the [Tenant's Council]."[62] Plaintiff nevertheless alleges that the statement quoted above was fraudulent, false, and known to be false by Robert Evans.[63] The mailing of this letter, Plaintiff alleges, constituted another predicate act of mail fraud.[64]

Plaintiff further alleges that Linda Evans and Cornerstone illegally hired an Assistant Property Manager without the review and participation of the Tenant Council.[65] On September 21, 2005, Cornerstone asked the Board to approve Cornerstone's candidate, Deborah Huff, for the position of Assistant Property Manager ("Cornerstone Letter").[66] When the Board arranged an interview in October 2005, Huff allegedly told the Board that she had begun working as Assistant Property Manager on September 27, 2005.[67]

Plaintiff characterizes the September 21, 2005 letter as "a fraudulent effort to construct a 'paper trail' of apparent compliance with the requirements of the Partnership Agreement, and a predicate act of mail fraud."[68]

Plaintiff advances an additional predicate act of mail fraud in transactions concerning a Ricoh Copier.[69] Plaintiff alleges that Linda Evans, when President of the Tenant Council in 2003, entered into a long-term lease of a copier from GE Capital.[70] Allegedly, the copier remained in Cornerstone's custody until it was repossessed for non-payment in March 2006.[71] The Tenant Council became aware of the contract with GE Capital in late 2006, and obtained a copy of the copier lease on March 23, 2007.[72] In a letter dated March 26, 2007, the Tenant Council asked Cornerstone to assume responsibility for the debt.[73] The Tenant Council subsequently settled with the credit card company on May 27, 2007 for $4,000.[74] Plaintiff alleges that Cornerstone's *failure* to respond to Plaintiff's March 26, 2007 demand letter constitutes a predicate act of mail fraud, and breach of fiduciary duty.[75]

Plaintiff also raises a host of other allegations against various defendants, such as

**59.** *See* Letter from Robert Evans, Executive Vice President of Cornerstone Corporation, to James McNeill, President of Roxse Tenant's Council (Sept. 15, 2005), Ex. G to Pl.'s Am. Compl. ("Second Robert Evans Letter").

**60.** Am. Compl. ¶ 58.

**61.** In evaluating a motion to dismiss, courts may examine "documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993).

**62.** Second Robert Evans Letter.

**63.** Am. Compl. ¶ 58.

**64.** *Id.*

**65.** *Id.* at ¶ 60.

**66.** *See* Letter from Robert Evans, Executive Vice President of Cornerstone Corporation, to James McNeill, President of Roxse Tenant's

Council (Sept. 21, 2005), Ex. I to Pl.'s Am. Compl. ("Cornerstone Letter").

**67.** Am. Compl. ¶ 60.

**68.** *Id.*

**69.** *Id.* at ¶¶ 64–66.

**70.** *Id.* at ¶ 64.

**71.** *Id.* at ¶ 65.

**72.** *Id.*

**73.** *Id.* at ¶ 66.

**74.** *Id.*

**75.** *Id.*

(1) violation of the Partnership Agreement; (2) favoritism in allocating apartments; (3) illegal interference with protected tenant activities; (4) illegal attempts at eviction; and (5) illegal kickbacks.[76] But since these allegations do not relate to Plaintiff's federal claims, and this court declines to exercise supplemental jurisdiction over the state law claims, these allegations are not recited in detail.

## B. Procedural Background

On April 5, 2007, Plaintiff filed the instant action. On June 7, 2007, Defendants moved to dismiss the case based on Fed. R.Civ.P. 12(b)(6). This court denied Defendants' motion without prejudice, and specifically instructed Plaintiff to file an Amended Complaint that set out both "a particularized account of the fraudulent activity allegedly committed by Defendant, pursuant to Rule 9(b) of the Federal Rules of Civil Procedure;" and "a full account of the RICO claim, particularly parts (2) and (3) of the Supreme Court's four-part test," which focuses on the enterprise, and the pattern of racketeering activity.

Plaintiff filed its Amended Complaint on November 8, 2007. Defendants renewed their *Motion to Dismiss* on December 3, 2007. Plaintiff submitted its opposition to the renewed *Motion to Dismiss* on January 11, 2008. Defendants filed a reply to Plaintiff's opposition on January 23, 2008. This court conducted a Motion Hearing on May 15, 2008, and took the matter under advisement.

## II. DISCUSSION

### A. Count 1—Conspiracy

This court begins the analysis of each claim by stating the appropriate legal standard.

#### 1. 18 U.S.C. § 1962(c)

##### a. Legal Standard

To make out a RICO claim under 18 U.S.C. § 1962(c), Plaintiff must allege "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity."[77] Plaintiff must also show that the violative conduct caused injury to its business or property.[78] Though the four-part test appears straightforward, case law and statutory definitions complicate the picture.

As defined by the First Circuit, an "enterprise" is "a group of persons associated together for a common purpose of engaging in a course of conduct."[79] In addition, there must be an "ongoing organization" with "associates functioning as a continuous unit."[80]

A "pattern" consists of at least two predicate acts that (1) are related *and* (2) amount to or pose a threat of continued criminal activity.[81] This is the so-called "continuity plus relationship" test.[82] Plaintiff may establish continuity through either the "closed-ended" (in the past) or "open-ended" (existing in the future) approach. Under the closed-ended approach, Plaintiff must allege " 'a series of related predicates extending over a substantial period of time' that 'amount to' a

**76.** *See id.* at ¶¶ 67–89.

**77.** *Sedima v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

**78.** *Id.*

**79.** *See United States v. Connolly,* 341 F.3d 16, 25 (1st Cir.2003) (*citing U.S. v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)).

**80.** *Id.* at 25, (*citing Turkette,* 452 U.S. at 583, 101 S.Ct. 2524).

**81.** *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

**82.** *Efron v. Embassy Suites (P.R.), Inc.,* 223 F.3d 12, 15 (1st Cir.2000).

**367**

threat of continued criminal activity." [83] Under the open-ended approach, Plaintiff must allege that the "racketeering acts themselves include a specific threat of repetition extending indefinitely into the future [or] . . . are part of an ongoing entity's regular way of doing business." [84]

"Racketeering activity" refers to any act that violates one of the laws specified in the RICO statute.[85] This may include mail fraud, wire fraud, or violations of the Hobbs Act.[86]

### b. Plaintiff's Allegations

In evaluating a *Motion to Dismiss* under Fed. R. Civ. P 12(b)(6), this court must accept as true "all well-pleaded factual averments" and indulge "all reasonable inferences in the plaintiff's favor." [87] But it need not credit "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." [88]

Plaintiff initially alleges that two enterprises are involved in this conspiracy: the Partnership and Roxse Homes itself.[89] The Partnership has existed only since February 2004, while Roxse Homes was established in 1969. For the first time, however, in its Opposition to the Motion to Dismiss, Plaintiff enters a third candidate: it accuses *itself* of being a RICO enterprise during much of Linda Evans' tenure.[90] But since courts cannot examine materials not properly referenced in the Amended Complaint,[91] this court will not consider the earlier incarnation of the Tenant Council as an enterprise for RICO purposes.

This court must now determine whether Plaintiff has alleged a "pattern" of racketeering activity. To do so, Plaintiff must allege—with the requisite specificity—two or more related predicate acts of racketeering within a ten-year period.[92] Allegations of predicate acts suffuse the Amended Complaint. They include one act of extortion, and assorted acts of mail fraud: (1) MassHousing Submissions; (2) Tenant Council Submissions; (3) Linda Evans Checks; (4) Two Robert Evans Letters; (5) Cornerstone Letter; and (6) Failure to Respond to Plaintiff's March 2007 Demand Letter.

But this court need not accept all of these allegations as well-pleaded. Indeed, a fair read of the Amended Complaint militates otherwise. As to the extortion claim, Plaintiff states that on "information and belief, Linda Evans . . . *may* have extorted [a] payment from Cornerstone and/or Roxse Residences, and/or their principals, Robert Evans and Paul Tryder. . . ." [93]

Several elements of this allegation prevent this court from accepting it as well-pleaded: (1) its reliance on "information and belief;" (2) the verb tense "may have," which indicates possibility or speculation;

**83.** *Giuliano v. Fulton,* 399 F.3d 381, 387 (1st Cir.2005).

**84.** *Id.* at 387 (*citing H.J.,* 492 U.S. at 242, 109 S.Ct. 2893).

**85.** *See* 18 U.S.C. § 1961(1)(B).

**86.** *See id.* (referencing 18 U.S.C. §§ 1341, 1343 and 1951). The Hobbs Act proscribes interference with commerce by robbery, extortion, conspiracy, violence and other unsavory behavior. *See* 18 U.S.C. § 1951.

**87.** *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996) (citation omitted).

**88.** *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990).

**89.** Am. Compl. ¶ 91.

**90.** *See* Pl.'s Mem. in Opp'n to Defs.' Mots. to Dismiss and to Strike Portions of the Am. Compl., at 11 [# 37].

**91.** *Watterson,* 987 F.2d at 3.

**92.** 18 U.S.C. § 1961(5).

**93.** Am. Compl. ¶ 34 (emphasis added).

and (3) the repeated use of the ambiguous conjunction "and/or." Did Linda Evans extort a payment or did she not? From whom did she extort such money? The Amended Complaint cannot adequately answer these basic questions. Nor does it provide a source of information or plausible reasons for this theory.[94] Consequently, this court cannot accept the allegation of extortion for the purposes of analyzing racketeering activity.

This court now turns to the numerous allegations of mail fraud. Under Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud...."[95] The requisite particularity should include what conduct was fraudulent; why the conduct was fraudulent; how the fraud was carried out; and when and where the conduct took place.[96] Moreover, the First Circuit has repeatedly held that "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."[97] Viewing the allegations of mail fraud through this more restrictive prism eliminates the remaining alleged predicate acts.

### i. MassHousing Submissions

■ The MassHousing Submissions have several problems. First, there is no indication of when or how the "successive Forms 990" were submitted to the IRS.[98] The First Circuit has repeatedly held that a RICO plaintiff must include the "time,

place and content of the alleged mail and wire communications perpetrating that fraud."[99] By not including the time or other identifying information about when the Forms 990 were sent, Plaintiff has failed to allege mail fraud with sufficient particularity.

Moreover, it is not clear that the conduct at issue in the MassHousing Submissions was, in fact, fraudulent. Plaintiff alleges that Defendants fraudulently misrepresented to MassHousing "that Linda Evans' decisions were actually those of persons whom she claimed to be officers and directors of the Tenant Council, but who had never been elected."[100] Plaintiff does not allege that Linda Evans stated that the officers and directors *were* democratically elected, and whether the officers and directors were elected or appointed does not alter the basic fact that they served in those roles. Even if, as Plaintiff alleges, these persons were not properly elected, that does not mean they were not "officers and directors of the Tenant Council," as Linda Evans represented. That Linda Evans claimed they held such positions cannot, on the current record, amount to an act of fraud.

### ii. Tenant Council Submissions

■ Similar problems emerge in the Tenant Council Submissions. The Amended Complaint states that "[c]opies of these submissions were sent to MassHousing."[101] But it does not specify when these reports were mailed to MassHousing. Moreover, and like the submissions

94. *Romani,* 929 F.2d at 878.

95. Fed.R.Civ.P. 9(b).

96. *See M & I Heat Transfer Prods. v. Willke,* 131 F.Supp.2d 256, 261 (D.Mass.2001) (Lasker, J.).

97. *See Efron,* 223 F.3d at 20; *Giuliano,* 399 F.3d at 388 (*quoting Efron,* 223 F.3d at 20).

98. Am. Compl. ¶ 31.

99. *See N. Bridge Assocs., Inc. v. Boldt,* 274 F.3d 38, 43 (1st Cir.2001). *Accord Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 42 (1st Cir.1991); *New England Data Servs., Inc. v. Becher,* 829 F.2d 286, 290 (1st Cir.1987).

100. Am. Compl. ¶ 31.

101. *Id.* at ¶ 32.

described above, the alleged fraud relates to the fact that the officers were appointed by Linda Evans, and not elected. But Linda Evans merely represented that they served on the Tenant Council. She said nothing about being democratically elected. Accordingly, this court cannot accept these submissions as predicate acts of mail fraud.

### iii. Linda Evans Checks

The Linda Evans checks present their own difficulties. Plaintiff conclusorily alleges that "[t]he mailing of each check constituted a separate predicate act of mail fraud." [102] But there is no support for Plaintiff's statement that the checks served any other purpose than the one written directly on the checks themselves. The check to the National Center for Housing Management, for instance, indicates that it was written to cover tuition for the "SBBS Training Course (10)." [103] Plaintiff merely hypothesizes, on "information and belief," that Linda Evans "fraudulently misappropriated Tenant Council funds for her personal use and benefit; that of Cornerstone, her employer; and others." [104] But without a proper source of information and reasons for the allegations,[105] such as the actual cost of tuition, this court cannot evaluate whether the amount on the check was inflated, and hence fraudulent. Consequently, this court cannot accept the mailing of this check as a predicate act of mail fraud.

Likewise, the three checks to the United House of Prayer suffer factual deficiencies. Plaintiff asserts that these checks were "far in excess of the true cost of any services that may have been rendered." [106] But allegations do not suffice, even on the favorable motion to dismiss standard. Plaintiff's failure to incarnate its skeletal allegations with factual meat prevents this court from accepting the mailing of these checks as predicate acts for RICO purposes.

### iv. Robert Evans Letters

Plaintiff further alleges that two letters written by Robert Evans are also predicate acts of mail fraud. In the First Robert Evans Letter—written in response to the Tenant Council's demand to return certain documents—Robert Evans allegedly wrote that he had not been involved in the Tenant Council's affairs and that Linda Evans assured him that the records were in the Tenant Council's office when she left.[107] Plaintiff asserts that this "letter was false and was intended to mislead; the mailing of it was a predicate act of mail fraud." [108] But a mere allegation of fraud, without any supporting documentation or explanation, does not satisfy the specificity requirements of Rule 9(b). Accordingly, this court does not accept the First Robert Evans Letter as a predicate act of mail fraud.

The Second Robert Evans Letter has its own infirmities. Plaintiff alleges that the letter contained a statement to the effect that "all such decisions were ratified by the prior Board and could not be revisited." [109] Plaintiff then alleges that this "statement was fraudulent and false and was known by Mr. Evans to be false at the time it was made." [110] As noted above,

102. *Id.* at ¶ 53.

103. *See* Ex. F to Pl.'s Am. Compl. at 6.

104. Am. Compl. ¶ 51.

105. *Romani,* 929 F.2d at 878.

106. Am. Compl. ¶ 52.

107. *Id.* at ¶ 47.

108. *Id.*

109. *Id.* at ¶ 58.

110. *Id.*

however, the letter says *nothing* to the effect that a decision cannot be revisited.[111] Plaintiff's allegations cannot make it otherwise. The letter *does*, however, include documentation that Linda Evans "was hired after consultation with and approval from the [Tenant Council]," as well as signed statements from the Directors "attesting to the fact that they were consulted with and approved the hiring of Linda Evans."[112] Whether or not the Directors lent their approval is a separate matter into which this court will not delve. For present purposes, however, this court cannot accept Plaintiff's characterization of the Second Robert Evans Letter as a predicate act of mail fraud.

### v. The Cornerstone Letter

The Cornerstone Letter also requires interpretative gymnastics to be read as a predicate act of mail fraud. The letter, dated September 21, 2005, states that Cornerstone "would like to promote Deborah Huff to fill the open position of Assistant Property Manager," and includes a written recommendation as well as Huff's resume.[113] On October 18, 2005, Huff informed the Tenant Council that she had begun working as Assistant Property Manager on September 27, 2005—six days after the letter was sent. Plaintiff alleges that the letter was therefore "a fraudulent effort to construct a 'paper trail' of apparent compliance with the requirements of the Partnership Agreement, and a predicate act of mail fraud."

But as this memorandum has repeatedly stressed, Plaintiff's mere allegations cannot transform a letter into act of mail fraud. In the letter, Cornerstone sought

to promote Huff, and accordingly sought the Tenant Council's approval. But Cornerstone's subsequent failure to obtain the Tenant Council's approval does not render this letter fraudulent. The letter contains no facts or assertions that intentionally pervert the truth to induce someone to part with something of value, or falsely represent a matter of fact to induce someone to incur a legal injury.[114] Indeed, it is difficult to imagine a situation where hortatory language ("We would like to ...") or inquisitive language ("May we have your approval?") could be deemed fraudulent. In any event, Plaintiff's theory—that the letter was written to create a paper trail of apparent compliance—is insufficiently supported for this court to deem the letter a predicate act of mail fraud.

### vi. Failure to Respond to Demand Letter

The final allegation of mail fraud assumes a most unusual form: the *failure* to respond to a demand letter. After the copier had been repossessed, Plaintiff alleges that the Tenant Council asked Cornerstone to take responsibility for the debt in a letter dated March 26, 2007. In its Amended Complaint, Plaintiff theorizes that "Cornerstone's failure to respond to the March 26, 2007 written inquiry from its partner was a breach of fiduciary duty and a predicate act of mail fraud...."[115]

■ Plaintiff is correct in asserting that a defendant's failure to disclose information may constitute mail fraud if the defendant has a legal, professional or contractual duty to divulge such information.[116] But a far simpler explanation is possible here.

---

111. *Id.*

112. *See* Second Robert Evans Letter.

113. *See* Cornerstone Letter.

114. *See* Black's Law Dictionary 685 (8th ed. 2004).

115. Am. Compl. ¶ 66.

116. *See Bonilla v. Volvo Car Corp.,* 150 F.3d 62, 70 (1st Cir.1998).

On March 30, 2007—four days after the letter was sent—Cornerstone responded to the demand letter through its attorneys.[117] The response letter referenced the various allegations contained in letters dated March 21, 2007; March 26, 2007; and March 28, 2007.[118] It also stated that, "The General Partner and Cornerstone deny each and every allegation." [119] This may not have been the response Plaintiff sought, but the response letter effectively negatives the allegation that Defendant "fail[ed] to respond to the March 26, 2007 written inquiry...." [120] Accordingly, this court does not accept Plaintiff's allegation that the failure to respond to its March 26, 2007 letter constituted an act of mail fraud.

Plaintiff raises a number of other allegations of Defendant's misconduct, including inter alia the disappearance of documents, violations of the Partnership Agreement, and illegal interference with protected tenant activities. These allegations may constitute fraud, or violations of either common law or statutory law. But since they do not implicate the use of mail or other predicate acts under RICO, this court does not consider them.[121]

### 2. 18 U.S.C. § 1962(d)

To make out a violation of 18 U.S.C. § 1962(d), Plaintiff must allege four elements:

(1) the existence of enterprise affecting interstate commerce, (2) that the defendant knowingly joined the conspiracy to participate in the conduct of the affairs of the enterprise, (3) that the defendant participated in the conduct of the affairs of the enterprise, and (4) that the defendant did so through a pattern of racketeering activity by agreeing to commit, or in fact committing, two or more predicate offenses.[122]

The First Circuit distinguished violations of § 1962(c) and § 1962(d) in the following way. For § 1962(c), discussed above, the plaintiff must *prove* two predicate offenses.[123] For § 1962(d), Plaintiff must show that a defendant *agreed* with others to commit two predicate offenses.[124]

Even under the § 1962(d) standard, Plaintiff has not made out a prima facie case of conspiracy. As the previous discussion makes clear, it has not shown that any Defendant committed two or more acts of racketeering. Nor has it shown that any Defendant agreed to commit two predicate offenses. Accordingly, this court dismisses Plaintiff's conspiracy claim under 18 U.S.C. § 1962(d).

### B. Count II—Deprivation of Tangible Property

In its second count, Plaintiff alleges that Defendants' various acts of wire and mail fraud, coupled with its act of extortion, has deprived Plaintiff of tangible property. Since this court has already disclaimed these predicate acts, however, Plaintiff's second count has no factual basis. For the

117. *See* Letter from Richard Zielinski, Counsel for Roxse Residences and Cornerstone Corporation to David J. Fried, Counsel for Tenant's Council (Mar. 30, 2007), Ex. B to Pl.'s Am. Compl. [# 24].

118. *Id.*

119. *Id.*

120. Am. Compl. ¶ 66.

121. *See Fleet Credit Corp. v. Sion,* 893 F.2d 441, 445 (1st Cir.1990) ("acts of common law fraud that do not implicate the mails (or the wires) do not constitute 'racketeering activity' under the definition found within the RICO statute"). *Accord Giuliano,* 399 F.3d at 388.

122. *Aetna Casualty Sur. Co. v. P & B Autobody,* 43 F.3d 1546, 1561 (1st Cir.1994).

123. *Id.* at 1562.

124. *Id.*

reasons stated above, this court dismisses Count II.

### C. Count III—Deprivation of the Right to Honest Services

In its third count, Plaintiff alleges that Defendants' "numerous acts of mail and wire fraud" violated Plaintiff's "intangible right of honest services," in violation of 18 U.S.C. § 1346.[125] But as discussed at length above, Plaintiff has not pled the predicate acts of mail fraud with sufficient specificity to survive a *Motion to Dismiss.* Since the claim of violation of the right to honest services hinges on mail or wire fraud, and Plaintiff has failed to plead mail or wire fraud with the requisite specificity,[126] this court hereby dismisses the third court of Plaintiff's Amended Complaint.

### D. Count IV—State Law Claim

This court declines to exercise supplemental jurisdiction over Plaintiff's fourth count, a violation of Massachusetts General Law ch. 186, § 18.

### III. CONCLUSION

For all of the foregoing reasons, this court hereby GRANTS Defendants' *Motion to Dismiss.* Plaintiff's federal law claims are dismissed with prejudice. Plaintiff's state law claim is dismissed without prejudice.

An Order shall issue.

125. *See* 18 U.S.C. § 1346 (defining scheme to defraud).

126. *See United States v. Martin,* 228 F.3d 1, 17 (1st Cir.2000) (noting that Congress passed 18 U.S.C. § 1346 to expand the ambit of mail and wire fraud from "property or some other item of economic value" to include the "intangible right to honest services"); *United States v. Vinyard,* 266 F.3d 320, 326 (4th

*ORDER*

For the reasons set forth in the accompanying memorandum, this court hereby orders:

1. Defendants' *Motion to Dismiss Amended Complaint* [#33] is GRANTED.

2. Defendants' *Motion to Strike* [#35] is DENIED AS MOOT.

IT IS SO ORDERED.

Cir.2001) ("Although judicial interpretation of the 'honest services' doctrine has somewhat limited its scope in the private employment context ... those limitations have not altered the essential elements of the mail fraud offense that must be alleged in the indictment."); *United States v. Ervasti,* 201 F.3d 1029, 1036 (8th Cir.2000) (noting that 18 U.S.C. § 1346 is an expansion of 18 U.S.C. § 1341).